Slip Op. No. 19-20

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **STAR PIPE PRODUCTS,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before: Timothy C. Stanceu, Chief Judge** |
| Defendant, | **Court No. 17-00236** |
| and | |
| **ANVIL INTERNATIONAL,** | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Remanding to the issuing agency a decision interpreting the scope of an antidumping duty order on certain non-malleable cast iron pipe fittings from the People's Republic of China]

Dated:  February 13, 2019

*Francis J. Sailer*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, D.C., for plaintiff.  With him on the brief were *Ned H. Marshak* and *Kavita Mohan*.

*Sarah Choi*, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With her on the brief were *Chad A. Readler*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *L. Misha Preheim*, Assistant Director.  Of counsel was *Kristen E. McCannon*, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

*J. Michael Taylor*, King & Spalding LLP, of Washington, D.C., for defendant-intervenor. With him on the brief was *Daniel L. Schneiderman*.

Stanceu, Chief Judge:  Plaintiff Star Pipe Products ("Star Pipe") contests a 2017 "Final

Scope Ruling" in which the International Trade Administration, U.S. Department of Commerce

("Commerce" or the "Department") interpreted the scope of an antidumping duty order (the "Order") on non-malleable cast iron pipe fittings from the People's Republic of China ("China") to include certain ductile iron flanges imported by Star Pipe.  Before the court is Star Pipe's motion for judgment on the agency record, in which Star Pipe argues that Commerce should have determined that its ductile iron flanges are excluded from the scope of the Order.

Star Pipe claims in the alternative that Commerce erred in not initiating a formal scope inquiry, under which Commerce would have been required to consider additional criteria as set forth in the Department's regulation.  Plaintiff also claims in the alternative that should the Final Scope Ruling be sustained, Commerce must be held to have acted unlawfully in issuing liquidation instructions to U.S. Customs and Border Protection ("Customs") directing the assessment of antidumping duties on entries of its flanges that were made prior to issuance of the Final Scope Ruling.

Defendant United States and defendant-intervenor Anvil International, LLC, a United States manufacturer of the domestic like product, oppose plaintiff's motion.

The court remands the Final Scope Ruling to Commerce for reconsideration.  The court holds in abeyance any ruling on plaintiff's alternative claims pending resolution of plaintiff's claim contesting the Final Scope Ruling on the merits.

## I. BACKGROUND

Commerce issued the antidumping duty order on non-malleable cast iron pipe fittings from China in April 2003.  *Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe Fittings From the People's Republic of China*, 68 Fed. Reg. 16,765 (Apr. 7, 2003) (the "*Order*"). Star Pipe filed with Commerce a request for a scope ruling (the "Scope Ruling Request") on June 21, 2017, in which it sought a ruling excluding its ductile iron flanges from the scope of the

Order.  *Star Pipe Products Scope Request: Ductile Iron Flanges* (June 21, 2017) (P.R. Docs. 1-3)

("*Scope Ruling Request*").[1]

Commerce issued the Final Scope Ruling on August 17, 2017, in which it ruled that the

ductile iron flanges are within the scope of the Order.  *Final Scope Ruling on the Antidumping*

*Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China:*

*Request by Star Pipe Products* (Aug. 17, 2017) (P.R. Doc. 13) ("*Final Scope Ruling*").

Star Pipe commenced this action on September 15, 2017.  Summons (Sept. 15, 2017),

ECF No. 1; Compl. (Sept. 15, 2017), ECF No. 4.  On May 10, 2018, Star Pipe filed the instant

motion for judgment on the agency record.  Pl.'s Mot. for J. on the Agency R. under Rule 56.2

(May 10, 2018), ECF No. 29 ("Pl.'s Br.").  Defendant responded on August 24, 2018, and

defendant-intervenor responded on September 7, 2018.  Def.'s Resp. in Opp'n to Pl.'s Mot. for J.

on the Agency R. (Aug. 24, 2018), ECF No. 37; Def.-Inter.'s Resp. in Opp'n to Pl.'s Mot. for J.

on the Agency R. (Sept. 7, 2018), ECF No. 38.  Plaintiff replied on September 25, 2018.  Pl.'s

Reply (Sept. 25, 2018), ECF No. 41.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction according to section 201 of the Customs

Courts Act of 1980, 28 U.S.C. § 1581(c) (2012), which grants jurisdiction over civil actions

brought under section 516A of the Tariff Act of 1930, 19 U.S.C. § 1516a (2012).[2]  Among the

decisions that may be contested under section 516A is a determination of "whether a particular

---

[1] All citations to documents from the administrative record are to public documents. These documents are cited as "P.R. Doc. ___."

[2] All statutory citations herein are to the 2012 edition of the United States Code and all regulatory citations herein are to the 2017 edition of the Code of Federal Regulations.

type of merchandise is within the class or kind of merchandise described in an . . . antidumping

or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). In reviewing a contested scope

ruling, the court must set aside "any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law."

*Id.* § 1516a(b)(1)(B)(i). Commerce may not disregard record evidence that detracts from its

intended conclusion. *See, e.g.*, *CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373

(Fed. Cir. 2016) ("The substantiality of evidence must take into account whatever in the record

fairly detracts from its weight." (quoting *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720

(Fed. Cir. 1997))).

   B. The Final Scope Ruling Must Be Remanded to Commerce for Reconsideration

   Determining whether merchandise is within the scope of an antidumping or

countervailing duty order begins with the scope language. *Mid Continent Nail Corp. v. United

States*, 725 F.3d 1295, 1302 (Fed. Cir. 2013); *see Duferco Steel, Inc. v. United States*, 296 F.3d

1087, 1089 (Fed. Cir. 2002) ("*Duferco*"). The Court of Appeals for the Federal Circuit ("Court

of Appeals") has instructed that "[s]cope orders may be interpreted as including subject

merchandise only if they contain language that specifically includes the subject merchandise or

may be reasonably interpreted to include it." *Duferco*, 296 F.3d at 1089.

   Under its regulation governing scope determinations, 19 C.F.R. § 351.225(k), Commerce

"will take into account the following: (1) The descriptions of the merchandise contained in the

petition, the initial investigation, and the determinations of the Secretary [of Commerce]

(including prior scope determinations) and the [U.S. International Trade] Commission

[('ITC')]." 19 C.F.R. § 351.225(k)(1).

If Commerce determines that the criteria of § 351.225(k)(1) are not dispositive,

Commerce considers the other factors set forth in § 351.225(k)(2).  Those factors are: "(i) The

physical characteristics of the product; (ii) The expectations of the ultimate purchasers; (iii) The

ultimate use of the product; (iv) The channels of trade in which the product is sold; and (v) The

manner in which the product is advertised and displayed."  *Id.* § 351.225(k)(2).  The Final Scope

Ruling determined that Star Pipe's flanges were subject to the Order based on § 351.225(k)(1)

and, therefore, did not apply the criteria of § 351.225(k)(2).  *Final Scope Ruling* 1, 13.

### 1. The Merchandise that Is the Subject of Star Pipe's Scope Ruling Request

The Scope Ruling Request stated that "[t]he products that are the subject of this scope

request are flanges imported by Star Pipe that are made from ductile iron, and meet the American

Water Works Association ('AWWA') Standard C115."  *Scope Ruling Request* 3.  It stated that

"[a] flange is an iron casting used to modify a straight end pipe to enable its connection either to

a flanged pipe, a flanged pipe fitting or another flange attached to the otherwise straight end of

another pipe, in order to connect pipes, valves, pumps and other equipment to form a piping

system."  *Id.*  The Scope Ruling Request added that the flanges "are for the water and wastewater

industries."  *Id.* at 10; *see also id.* at 18 ("Star Pipe's ductile iron flanges are sold for use in water

or waste waterworks projects.  The majority of sales—as with excluded non-scope products—are

sold to fabricators to fabricate the products into flanged pipes.").

The Scope Ruling Request included specifications and illustrations for each of eleven

models of ductile iron flanges, which are similar in design but vary with respect to dimensions

and specifications.[3]  *Scope Ruling Request* Ex. 1 ("Star Pipe Products Catalog—Products Subject

---

[3] The eleven models are in four groups, identified by name and product code as follows:

(continued . . .)

Case 1:17-cv-00236-TCS    Document 51    Filed 02/13/19    Page 6 of 17

Court No. 17-236                                                              Page 6

To Request"). Each is produced to be assembled to a ductile iron pipe. *Id.* Each is in the shape

of a disc. *Id.* In the thicker center portion (the "hub") of each flange is a large hole with tapered

thread to facilitate attachment of the flange to the end of a threaded pipe. *Id.* The outer, thinner

portion of each flange is drilled with eight holes (either tapped or untapped), arranged in a circle,

for insertion of fasteners. *Id.* A photograph in the Scope Ruling Request illustrates how two

pipes to which flanges have been assembled can be joined at the ends using bolts and nuts

through the eight holes, with a gasket fitted between the two flanges to seal the joint. *Id.* at Ex. 8

("Photo of Threaded Fitting v. Threaded Flange").

2. The Scope Language in the Order

The scope language in the Order is as follows:

> The products covered by this order are finished and unfinished non-malleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or unthreaded, regardless of industry or proprietary specifications. The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings. These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings." These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications. Most building codes require that these products are Underwriters Laboratories (UL) certified. The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.

---

(. . . continued)

"HI Hub threaded 125 lb. flanges for ductile pipe (ductile iron)" (product codes FLD02SP, FLD03SP, and FLD04SP);

"Reducing 125 lb. flanges for ductile pipe (ductile iron)" (product codes FLD0403, FLD0604, and FLD0804),

"Threaded 125 lb. flanges for studs for ductile pipe (ductile iron)" (product codes FLDTFS02, FLDTFS03, FLDTFS04), and

"Threaded 250 lb. flanges for studs for ductile pipe (ductile iron)" (product codes FL250D03 and FL250D04)."

*Scope Ruling Request* 2; *see id.* at Ex. 2 ("Photographs of Sample Flanges").

> Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this petition [*sic*].[4]  These ductile fittings do not include grooved fittings or grooved couplings.  Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

*Order*, 68 Fed. Reg. at 16,765.

### 3. The Final Scope Ruling

The Final Scope Ruling states that "[f]or this scope proceeding, the Department examined the language of the *Order*, the description of the products contained in Star Pipe's scope ruling request, and prior scope determinations." *Final Scope Ruling* 10.  Commerce added that "[w]e find that these factors, are, together, dispositive as to whether the product at issue is subject merchandise, in accordance with 19 CFR 351.225(k)(1)." *Id.*

Because the products at issue are made of ductile cast iron rather than non-malleable ("gray") cast iron, they are not described by the first paragraph of the scope language. Commerce concluded in the Final Scope Ruling that they were described by the first clause of the first sentence in the second paragraph, i.e., that the flanges are "[f]ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above." *Order*, 68 Fed. Reg. at 16,765; *see Final Scope Ruling* 12.

---

[4] The reference to "this petition" is incorrect and probably should read "this order." Because it is Commerce, not the petitioner, that ultimately determines the scope, the scope of the investigation as proposed in the petition is not necessarily the scope Commerce determines when issuing an order.

Commerce rejected Star Pipe's contention that the flanges were not "pipe fittings" within the scope of the Order. *Final Scope Ruling* 10. The Final Scope Ruling states that "[w]hile the scope of the *Order* does not provide a definition of the term 'pipe fittings,' . . . the ITC does define the term in its final injury determination," adding that "the ITC states that '{p}ipe fittings generally are used to connect the bores of two or more pipes or tubes, connect a pipe to another apparatus, change the direction of fluid flow, or close a pipe.'" *Id.* (footnote omitted). Commerce concluded that Star Pipe's flanges satisfied this requirement and therefore were "pipe fittings" for purposes of the Order, based on its finding that they can be used to connect the bores of two or more pipes or to connect a pipe to another apparatus. *Id.* at 10-11.

Commerce also rejected Star Pipe's argument "that the ITC does not consider a flange to be a flanged fitting and that this demonstrates that flanges are different from fittings." *Id.* at 11. According to the Final Scope Ruling, "[w]hile the ITC's statement does demonstrate that flanges are different from flanged fittings, it does not demonstrate that flanges are not fittings." *Id.*

Commerce concluded, further, that the exclusion for ductile cast iron fittings in the last sentence of the scope language did not remove Star Pipe's flanges from the scope because these flanges had not been demonstrated to meet either of the American Water Works Association ("AWWA") specifications mentioned in the exclusion (AWWA C110 or AWWA C153). *Id.* at 11-13. Responding to Star Pipe's argument that its flanges met AWWA C115, which Star Pipe argued is a companion specification to AWWA C110 and C153 (but applies to flanges as opposed to flanged fittings, to which AWWA C110 and C153 are directed), Commerce concluded that Star Pipe "did not provide any record evidence or demonstrate how AWWA C115 is the companion specification to the AWWA C110 or C153." *Id.* at 11.

<u>4. The Final Scope Ruling Must Be Remanded for Reconsideration</u>

The court concludes that Commerce failed to comply with its regulation when it reached a decision to place Star Pipe's flanges in the scope of the Order without considering the antidumping duty petition.  In addition, Commerce failed to give fair and adequate consideration to record evidence contained in the final injury determination of the ITC that detracts from its conclusion.  As a result of these failures, the Final Scope Ruling cannot be shown to be supported by substantial evidence contained on the record as a whole.

<u>a. By Failing to Consider the Descriptions of the Merchandise Contained in the Petition, Commerce Did Not Comply with 19 C.F.R. § 351.225(k)(1)</u>

The Department's regulation requires that the Secretary of Commerce "take into account . . . [t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1).  The "analysis" portion of the written determination, *Final Scope Ruling* 10-13, makes no mention of analyzing the merchandise descriptions in the petition and, to the contrary, indicates that Commerce did not consider the petition at all.  *See Final Scope Ruling* 10 ("For this scope proceeding, the Department examined the language of the *Order*, the description of the products contained in Star Pipe's scope ruling request, and prior scope determinations.").  The court notes, further, that no portion of the petition has been placed on the administrative record of this case, indicating further that Commerce failed to consider it, despite the requirement in § 351.225(k)(1) that it do so.

The Scope Ruling Request included arguments grounded in the petition.  *Scope Ruling Request* 9-10.  Star Pipe argued that the petition, while mentioning flanged fittings, made no mention of flanges.  *Id.* at 9.  The petition, according to the Scope Ruling Request, also stated that virtually all subject fittings are used in fire protection systems and steam heat conveyance

systems whereas Star Pipe's flanges "are for the water and wastewater industries and are not generally used in fire protection systems or steam heat conveyance systems." [5]  *Id.* at 9-10 (citing Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China, A-570-875 (Feb. 21, 2002) at 4).

In conclusion, Commerce did not comply with its regulation, 19 C.F.R. § 351.225(k)(1), when it failed to consider the merchandise descriptions in the petition in response to petition-related arguments Star Pipe made in the Scope Ruling Request.  The court, therefore, must order Commerce to consider the merchandise descriptions in the petition and the arguments Star Pipe made regarding them.  The court will order defendant to place on the record the petition or portions of the petition that Commerce reviews.

b. While Relying on the ITC Report for One Purpose, Commerce Failed to Address Record Evidence Detracting from its Conclusion that Star Pipe's Flanges Are Subject Merchandise

As mentioned previously, Commerce, in concluding in the Final Scope Ruling that Star Pipe's flanges are pipe fittings within the scope of the Order, relied upon certain language in the ITC's final injury determination concerning the uses of pipe fittings: "Specifically, the ITC states that 'pipe fittings generally are used to connect the bores of two or more pipes or tubes, connect a pipe to another apparatus, change the direction of fluid flow, or close a pipe.'"  *Final Scope Ruling* 10 (footnote omitted).  This statement appears in the "Product Description" section of the Views of the Commission in the ITC Report, Non-Malleable Pipe Fittings From China, Inv. No. 731-TA-990 (Final), USITC Pub. No. 3586 (Mar. 2003) ("*ITC Report*") 4.  Commerce concluded from this statement, which it interpreted to be a definition of the term "pipe fitting" as used in the scope language, that Star Pipe's flanges are "pipe fittings" for purposes of the Order.

---

[5] The Final Scope Ruling does not discuss whether the scope exclusion for "cast iron soil pipe fittings" has implications for this case.

*Final Scope Ruling* 10.  The ITC report and the Scope Ruling Request contain record evidence detracting from this conclusion.

The Final Scope Ruling did not quote or discuss the sentence in the ITC Report immediately preceding the one on which it relied.  That preceding sentence, which followed a quotation of the scope language, was as follows: "Accordingly, the subject imports include non-malleable cast iron pipe fittings as well as certain ductile cast iron pipe fittings, such as those that can be used in traditionally non-malleable *pipe fitting applications*."  *ITC Report* 4 (emphasis added).  This language at least suggests that the pipe fittings subject to the Order are those used in pipe fitting applications.[6]  Here, there is evidence on the record that Star Pipe's ductile iron flanges are not suitable for, and are not approved for, use in pipe fitting applications.  This evidence, which is contained in the Scope Ruling Request and its exhibits, indicates that Star Pipe's flanges, rather than being suitable for use by pipe fitters, are suitable for use, and are used, by pipe fabricators, who distribute pipes that have been modified by the addition of the flanges.  *See Scope Ruling Request* 18.

The Scope Ruling Request identified only one use for Star Pipe's flanges: "to *modify a straight end pipe* to enable its connection either to a flanged pipe, a flanged pipe fitting or another flange attached to the otherwise straight end of another pipe, in order to connect pipes, valves, pumps and other equipment to form a piping system."  *Id.* at 3 (emphasis added).  The Scope Ruling Request stated that these flanges conform to AWWA Standard C115.  *Id.*  In Section 4.4 ("Fabrication"), AWWA C115 requires that "[t]hreaded flanges shall be *individually*

---

[6] "Pipe fitting" is defined as "the work of a pipe fitter," MERRIAM WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/pipe fitting (last visited Feb. 8, 2019), and "pipe fitter" is defined as "a worker who installs and repairs piping," MERRIAM WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/pipe fitter (last visited Feb. 8, 2019).

fitted and *machine* tightened on the threaded pipe *at the point of fabrication*." *Id.* at Ex. 3

("Excerpts from AWWA C115"), Sec. 4.4.1 (emphasis added). The AWWA standard cautions

as follows: "NOTE: flanges are not interchangeable in the field." *Id.* According to the standard,

the fabrication process involves more than simply threading the plain end of the pipe with a

tapered thread and assembling to it the taper-threaded flange. The fabricator must use "thread

compound" that "shall give adequate lubrication and sealing properties to provide pressure-tight

joints." *Id.* After attaching the flange, the fabricator machines ("faces") the flange end after the

final machine-tightening of the flange, ensuring that the flange is perpendicular to the pipe

centerline and that bearing surfaces for bolting are parallel to the flange face within three

degrees. *Id.* at Ex. 3, Sec. 4.4.3, Sec. 4.4.4. A further indication that flanges are not intended for

assembly to pipes in the field is the requirement in the AWWA standard that a fabricator

assembling flanges to both ends of a pipe standardize the assembly by aligning the bolt holes in

the flanges. *See id.* at Ex. 3, Sec. 4.4.4.

      In summary, there is record evidence that the threaded flanges imported by Star Pipe, in

their condition as entered, are not suitable for use in assembling piping systems.[7] Instead,

according to the Scope Ruling Request and AWWA standard C115, to which they are described

as conforming, they are suitable for use in the assembly of piping systems only after they have

undergone post-importation assembly and fabrication. Nevertheless, Commerce, in the Final

Scope Ruling, found that Star Pipe's flanges can connect the bores of two or more pipes, *Final*

---

      [7] The scope language expressly includes unfinished non-malleable iron pipe fittings and might be read to include certain unfinished ductile iron fittings. The inclusion of certain "unfinished" articles in the scope does not support the placement of Star Pipe's flanges within the scope. Here, the record evidence is that the flange is imported in a finished form ready for attachment to a pipe by a pipe fabricator, with a threaded hub and other physical characteristics meeting AWWA C115. *See Scope Ruling Request* Ex. 3, Sec. 4.3.

*Scope Ruling* 10, or connect a pipe to another apparatus, *id.* at 11 ("Having reviewed the record evidence, (*i.e.*, product documentation submitted by Star Pipe), the Department finds that Star Pipe's flanges conform to the ITC's definition of pipe fittings because the flanges can be used to connect a pipe to another apparatus.").  Seen in light of the record evidence on the whole, the Department's finding appears to describe the use of the flange only after the flange has become a component in the downstream product resulting from post-importation processing, i.e., a pipe to which a fabricator has added one or more flanges.  That product, however, is not the subject of the Scope Ruling Request and is not within the scope of the Order (which applies only to pipe fittings, not pipes or assemblies containing pipes).  Substantial evidence is not available on the administrative record to support a finding that Star Pipe's flanges, in the form in which they are imported, are suitable for, or approved for, joining the bores of two pipes or joining a pipe to another apparatus.

Other information in the ITC Report also detracts from the Department's conclusion that Star Pipe's flanges are subject merchandise.  The ITC Report stated that "[f]langed fittings are different from threaded fittings in that the flanged fittings are cast with an integral rim, or flange, at the end of the fitting." *ITC Report* I-9 (footnote omitted).  The report adds that "[t]he flanged connection is made by inserting a gasket in between the flanged ends of two separate pieces and securing the ends with several bolts," *id.*, and that "[b]ecause of the ease of dismantling, flanged fittings are used in places where maintenance is often required," *id.* at I-9 n.53.  Star Pipe's flanges do not conform to the description of "flanged fittings" in the ITC Report because they are not "cast with an integral rim, or flange, at the end of the fitting." *Id.* at I-9.  Instead, they are flanges in the entirety, and they are designed, and used, to add a flange to a straight length of pipe. *See Star Pipe's Resp. to Pet.'s Comments* (Aug. 1, 2017) (P.R. Doc. 9) Ex. 4

("Photographs of Flanged Fitting v. Flange").  As noted previously, Commerce stated in the

Final Scope Ruling that "[w]hile the ITC's statement does demonstrate that flanges are different

from flanged fittings, it does not demonstrate that flanges are not fittings," relying again on the

statement on the uses of fittings in the ITC Report.[8]  *Final Scope Ruling* 11.

      Other language in the ITC Report addresses the topic of flanged fittings made of ductile

cast iron.  Commerce does not mention in the Final Scope Ruling that the ITC considered *all*

flanged ductile cast iron fittings to be excluded from the scope, regardless of specification.  *ITC*

*Report* I-1 n.1 ("The subject fittings include non-malleable and ductile elbows, ells, tees, crosses,

and reducers as well as non-malleable flanged fittings."), I-8 ("[E]xcluded from the scope are

flanged ductile cast iron fittings and ductile fittings produced to AWWA C110 or AWWA C153

specifications." (footnote omitted)).

      In defining the domestic like product, the ITC, observing that no domestic producer filed

a questionnaire response indicating that it produced ductile cast iron flanged fittings, expressly

declined to broaden the domestic like product beyond the scope of the investigation to add this

class of products.  *Id.* at 7-8 ("Domestic producers did not report domestic production of ductile

---

[8] One of the prior scope rulings on which Commerce relied in placing Star Pipe's flanges within the scope of the Order is *Final Scope Ruling on the Black Cast Iron Flange, Green Ductile Flange, and the Twin Tee* (Sept. 19, 2008) ("*Taco Ruling*"), *appended to Final Scope Ruling* as Attachment 4.  *Final Scope Ruling* 10.  In that ruling, Commerce found that the black and green flanges at issue in that proceeding were "flanged fittings"; Commerce reached this finding "because they are fittings that are cast with an integral rim, or flange, at the end of the fitting."  *Taco Ruling* 9; *cf. Final Scope Ruling* 11 (noting that the ITC's statement demonstrates that flanges are different from flanged fittings).  Commerce also relied upon *Final Scope Ruling on the Antidumping Duty Order on Finished and Unfinished Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by Napac for Flanged Fittings* (Sept. 19, 2016) ("*Napac Ruling*"), *appended to Final Scope Ruling* as Attachment 2, for the proposition that Star Pipe's flanges have the same physical characteristics as the products at issue in that ruling.  *Final Scope Ruling* 12.  Some of the articles at issue in the Napac Ruling were described as gray iron flanged fittings, *Napac Ruling* 3, and the court is unable to conclude from the descriptions therein that the remaining articles were identical to Star Pipe's flanges.

flanged fittings that would otherwise correspond to merchandise within the scope.  Accordingly,

there is no data on domestic ductile flanged fittings that could be included in any broadened like

product analysis." (footnote omitted)).  Because ductile flanged fittings are excluded from the

scope of the domestic like product (which the ITC defined as identical to the scope of the

investigation), it cannot be concluded that the ITC reached an affirmative injury or threat

determination as to them.  This aspect of the ITC's investigation strongly cautions against an

interpretation of the scope language to include ductile flanged fittings, of any specification.  *See*

*Atkore Steel Components, Inc. v. United States*, 42 CIT __, __, 313 F. Supp. 3d 1374, 1381-82

(2018) (reasoning that consideration of (k)(1) sources importantly reduces the risk that

antidumping duties will be imposed absent an affirmative ITC injury or threat finding).

When viewed in the context of the ITC Report as a whole, the Department's conclusion

that Star Pipe's flanges are subject merchandise raises a question for which the Final Scope

Ruling does not provide a satisfactory answer.  That question is how, if ductile iron flanged

*fittings* were excluded from the scope of the antidumping duty investigation, ductile iron *flanges*

nevertheless were intended to be treated as subject merchandise during that investigation.

Commerce reached the conclusion that ductile iron flanges are within the scope even though the

ITC Report makes no mention of ductile iron flanges (or non-malleable iron flanges, for that

matter) and even though the ITC Report presents a detailed discussion of the various types of

merchandise that are within the scope (and, therefore, within the domestic like product, which

the ITC made equivalent to, and not broader than, the scope of the investigation).  *See ITC*

*Report* I-1 to I-9.  The absence of any mention of ductile iron flanges, as opposed to ductile

flanged fittings, in the ITC Report (and, according to plaintiff, in the petition) casts doubt on the

premise that ductile iron flanges were contemplated as part of either the scope of the

investigation or the scope of the domestic like product.  The Final Scope Ruling does not analyze

the issue of the physical and functional differences between ductile iron flanges and the

examples of "subject fittings" listed in the scope language.  *See Order*, 68 Fed. Reg. at 16,765

("The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged

fittings.").

      Read in the entirety, the ITC Report contains evidence lending weight to a conclusion

that Star Pipe's flanges are not subject merchandise.  Under 19 C.F.R. § 351.225(k)(1),

Commerce was not free to ignore this evidence.

### III. CONCLUSION AND ORDER

      In conclusion, the Department's regulation contemplates that Commerce will give

thorough and fair consideration to "[t]he descriptions of the merchandise contained in the

petition . . . and the determinations of the . . . Commission," 19 C.F.R. § 351.225(k)(1), in

deciding whether certain merchandise is within the scope of an order.  Commerce failed to do so

here.  It did not consider the petition, and its analysis of the ITC Report was so selective and

cursory as to ignore a substantial amount of information relevant to the scope question presented

in this case.  Commerce must correct these deficiencies in responding to this Opinion and Order.

      Because the court is ordering reconsideration of the Final Scope Ruling, it does not reach,

at this stage of the litigation, either of Star Pipe's two alternative claims.  Commerce is not

directed to consider the factors in 19 C.F.R. § 351.225(k)(2) pursuant to a formal scope inquiry,

and it is premature to address plaintiff's alternative claim contesting liquidation instructions.

      Therefore, upon consideration of plaintiff's motion for judgment on the agency record

and all papers and proceedings had herein, and upon due deliberation, it is hereby

      **ORDERED** that the stay ordered in this case, Order (Jan. 8, 2019), ECF No. 48, be, and

hereby is, terminated; it is further

**ORDERED** that the court's previous order granting plaintiff's motion for oral argument, Order (Oct. 25, 2018), ECF No. 45, be, and hereby is, vacated; it is further

**ORDERED** that plaintiff's motion for oral argument (Oct. 12, 2018), ECF No. 43, be, and hereby is, denied; it is further

**ORDERED** that plaintiff's motion for judgment on the agency record (May 10, 2018), ECF No. 29, be, and hereby is, granted in part; it is further

**ORDERED** that Commerce, within 90 days from the date of issuance of this Opinion and Order, shall submit a redetermination upon remand ("Remand Redetermination") that complies with this Opinion and Order; it is further

**ORDERED** that defendant shall supplement the administrative record with documents, or portions thereof, considered by Commerce in reaching the decision in the Remand Redetermination; it is further

**ORDERED** that plaintiff and defendant-intervenor shall have 30 days from the filing of the Remand Redetermination in which to submit comments to the court; and it is further

**ORDERED** that defendant shall have 15 days from the date of filing of the last comment on which to submit a response.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated:  February 13, 2019
            New York, New York