<div align="right">
A-570-875<br>
Remand Redetermination<br>
Slip Op. 21-110<br>
Scope Inquiry<br>
Star Pipe Products – Non-Malleable Cast Iron Pipe Fittings from China<br>
<b>Public Document</b><br>
E&C/Office IV:  AG
</div>

<div align="center">
<i>Star Pipe Products v. United States and Anvil International</i><br>
<b>Court No. 17-00236, Slip Op. 21-110 (August 26, 2021)</b>

FINAL RESULTS OF REDETERMINATION<br>
PURSUANT TO COURT ORDER
</div>

**I.   SUMMARY**

The U.S. Department of Commerce (Commerce) has prepared these final results of redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court) in *Star Pipe III*.[1]  These final remand results pertain to the scope inquiry submitted by Star Pipe Products (Star Pipe)[2] regarding whether its 11 ductile iron flanges are pipe fittings covered by the antidumping duty (AD) order on non-malleable cast iron pipe fittings (pipe fittings) from the People's Republic of China (China).[3]

In *Star Pipe III*, the Court found that Commerce's second remand redetermination[4] that Star Pipe's flanges are pipe fittings within the scope of the *Order* was not supported by substantial record evidence.[5]  Specifically, the Court held that certain of Commerce's findings

---

[1] *See Star Pipe Products v. United States and Anvil International*, Court No. 17-00236, Slip Op. 21-110 (August 26, 2021) (*Star Pipe III*).
[2] *See* Star Pipe's Letter, "Star Pipe Products Scope Request:  Ductile Iron Flanges Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China (A-570-875)," dated June 21, 2017 (Star Pipe Scope Request).
[3] *See Notice of Antidumping Duty Order:  Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*, 68 FR 16765 (April 7, 2003) (*Order*).
[4] *See Final Results of Redetermination Pursuant to Court Remand, Star Pipe Products v. United States*, Court No. 17-00236, Slip Op. 20-114 (CIT August 11, 2020), dated November 16, 2020 (*Star Pipe II Final Redetermination*), available at https://access.trade.gov/resources/remands/20-114.pdf.
[5] *See Star Pipe III* at 16.

related to the scope language, Petition,[6] U.S. International Trade Commission (ITC) Report,[7] and exhibits to the Star Pipe Scope Request are not supported by substantial evidence, and that Commerce failed to address, or address in any meaningful way, certain evidence on the record that detracts from Commerce's determination that Star Pipe's ductile iron flanges were covered by the scope of the *Order*.[8]  Accordingly, the Court ordered Commerce to issue a third decision upon remand, consistent with the Court's opinion, as described further below.

II.   ANALYSIS

   1. Scope of the *Order*

   The scope of the *Order* is as follows:

   The products covered by this *Order* are finished and unfinished nonmalleable cast iron pipe fittings with an inside diameter ranging from 1/4 inch to 6 inches, whether threaded or unthreaded, regardless of industry or proprietary specifications.  The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings.  These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings."  These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications.  Most building codes require that these products are Underwriters Laboratories (UL) certified.  The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.

   Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this *Order*.  These ductile fittings do not include grooved fittings or grooved couplings.  Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

---

[6] *See* Petitioners' Letter, "Petition for Imposition of Antidumping Duties:  Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated February 21, 2002 (Petition).
[7] *See Non-Malleable Cast Iron Pipe Fittings from China*, Investigation No. 731-TA-990 (Final), USITC Pub. No. 3586, 2003 (ITC Report).
[8] *Id.* at 35-36.

> Imports of covered merchandise are classifiable in the Harmonized Tariff Schedule of the United States (HTSUS) under item numbers 7307.11.00.30, 7307.11.00.60, 7307.19.30.60 and 7307.19.30.85. HTSUS subheadings are provided for convenience and customs purposes. The written description of the scope of the *Order* is dispositive.

Commerce determined in the Star Pipe Scope Ruling that Star Pipe's ductile iron flanges fell within the first clause of the first sentence of the second paragraph of the scope because they were "{f}ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above."[9] Star Pipe did not provide the inside diameter of its flanges, but did provide the measurements of the outside diameter of the pipes onto which each of these flanges fits. For each of the 11 flanges, the outside diameters for the corresponding pipes onto which the flanges are attached measure between 2.5 and 4.8 inches.[10] Since flanges are fitted directly onto pipes, with little to no gap between the flange and the pipe, it is reasonable to assume that the inside diameters of Star Pipe's 11 flanges are also within 2.5 and 4.8 inches. Accordingly, since the first paragraph of the *Order* covers pipe fittings with an inside diameter ranging from 1/4 inch to six inches, whether threaded or unthreaded, and Star Pipe's threaded flanges are within this diameter range, Commerce determined that Star Pipe's flanges had the same physical characteristics as those subject to the first paragraph of the scope.[11]

The Court in *Star Pipe III* held that interpreting the term "pipe fittings" in the scope language "as generally encompassing flanges is not *per se* unreasonable."[12] The Court also observed that flanges are not referenced in the scope language or the Petition in the list of

---

[9] *See* Star Pipe Scope Ruling at 12; *see also Final Results of Redetermination Pursuant to Court Remand, Star Pipe Products v. United States*, Court No. 17-00236, Slip Op. 19-20 (CIT February 13, 2019), dated June 27, 2019 (*Star Pipe I Final Redetermination*), available at https://access.trade.gov/resources/remands/19-20.pdf at 4-5; and *Star Pipe II Final Redetermination* at 5.
[10] *See* Star Pipe Scope Request at Exhibit 1.
[11] *See Star Pipe I Final Redetermination* at 4-5; *see also Star Pipe II Final Redetermination* at 5.
[12] *See Star Pipe III* at 17.

3

exemplars of products that are included in the scope of the *Order*, whereas flanged fittings that share a physical characteristic with flanges are mentioned.[13]  The Court held that

> In doing so, the language poses the question of why a good with a defining physical characteristic common with a flanged fitting, *i.e.*, a flange to allow attachment to other goods with flanges, was not also mentioned in the exemplars. This is not to conclude that the scope language, when read according to the plain meaning, must be interpreted to exclude flanges; rather, it is to recognize that the scope language by itself does not resolve the issue, and Commerce, therefore, is required to examine the other relevant evidence on the record.[14]

Although the narrative of the Petition, like the language of the scope of the *Order*, does not mention flanges, we note that product catalogues from Anvil International LLC (Anvil) and Ward Manufacturing Inc., the petitioners in the investigation, both referenced flanges as a type of pipe fitting in several instances in the Petition.[15]  The Court found that,

> Because the scope of an antidumping duty investigation is substantially influenced by the investigative scope proposed in the petition, it was reasonable for Commerce to accord weight to this evidence in interpreting the meaning of the term 'pipe fittings' in the scope language.  Moreover, interpreting this term as used in the scope language as generally encompassing flanges is not *per se* unreasonable.[16]

We continue to find that Star Pipe's flanges are pipe fittings that have the same physical characteristics as those fittings described in the first paragraph of the scope, the language of which is controlling.  However, in accordance with the Court's opinion, we have further examined the sources under 19 CFR 351.225(k)(1), as discussed below.

---

[13] *Id.* at 18.
[14] *Id.*
[15] *See* Petition at Exhibit 2.  For example, in *Star Pipe II*, the Court observed that the Anvil pipe fittings product catalogue in the Petition "depicts a 'flange union gasket type' appearing to be similar to the flanges under consideration …{and} a 'floor flange' that resembles one of Star Pipe's flanges."  *See Star Pipe Products v. United States and Anvil International*, 463 F. Supp. 3d 1366 (2020) Court No. 17-00236, Slip Op. 20-114 (August 11, 2020) (*Star Pipe II*) at 8.
[16] *See Star Pipe III* at 17.

## 2. End Use Exclusion for Waterworks in the 19 CFR 351.225(k)(1) Sources

The Court held that language in the Petition "is at least a suggestion that goods produced to standards for the water works industry were intended to be outside the scope of the investigation."[17] Similarly, as discussed further below, the Court found that there is evidence in the ITC Report that "strongly supports the view" that the ITC excluded all ductile iron flanged fittings from its analysis,[18] and that such evidence informs other portions of the ITC Report "suggest{ing} that the ITC may have considered ductile iron goods produced to AWWA standards for water supply and waste water applications to be excluded from the domestic like product."[19] We disagree with the Court's finding that the Petition and ITC Report indicate that pipe fittings produced for waterworks applications are excluded, but under respectful protest, are implementing the Court's opinion. Accordingly, because Star Pipe's flanges are used in water and wastewater industries and are generally not used in the traditional non-malleable pipe fitting applications listed in the Petition,[20] under respectful protest, we are implementing the Court's finding that evidence in the Petition and ITC Report supports that Star Pipe's flanges are excluded from the scope of the *Order*.

## 2. Ductile Iron Flanged Fittings and Flanges

The Court raised concerns with several of Commerce's findings with respect to the ITC Report, concluding that "Commerce fails to analyze the evidence that the ITC defined the domestic like product as corresponding to the scope of the investigation and, at the same time, declined to broaden the domestic like product to include any ductile flanged fittings."[21] With

---

[17] *Id.* at 22 (citing Petition at 4).
[18] *Id.* at 25.
[19] *Id.* at 27.
[20] *See* Star Pipe Scope Request at 10.
[21] *See Star Pipe III* at 24.

5

respect to such ductile iron fittings with flanged ends, the Court found that record evidence "strongly supports the view that the ITC excluded ductile flanged fittings from the unfairly trade imports that it found to threaten to injure the domestic industry."[22] In view of this finding, the Court noted that pursuant to section 731 of the Tariff Act of 1930, as amended, Commerce may impose antidumping duties only on those goods it determines are unfairly traded.[23] The Court also found that ductile iron flanges "are shown by the record evidence to share a defining physical characteristic with ductile flanged fittings, *i.e.*, the presence of a flange as a means of attachment to another article."[24] Further, referencing its earlier decisions, "{t}he {C}ourt identified language in the ITC Report indicating that the ITC considered all flanged fittings made of ductile cast iron to be excluded from the scope of the ITC's investigation, which suggested that ductile iron flanges also were considered by the ITC to be outside that scope."[25]

The Court held that Commerce failed to analyze the ITC Report's discussion of the possible exclusion for ductile iron flanged fittings and its relationship to ductile iron flanges.[26] We respectfully disagree that Commerce did not address this evidence. In both the first and second remands, we evaluated the evidence in the ITC Report along with the other sources under 19 CFR 351.225(k)(1) in discussing that flanges and flanged fittings are separate and distinct products.[27] As explained in the *Star Pipe II Final Redetermination*, we evaluated evidence in the ITC Report that, according to the Court's order in *Star Pipe II*, would detract from our finding that flanges are covered by the *Order*, and weighed that evidence with other record information,

---

[22] *Id.* at 25.
[23] *Id.*, fn.6.
[24] *Id.* at 25-26.
[25] *Id.* at 24 (citing *Star Pipe I* at 14-15).
[26] *Id.* at 24-25.
[27] *See Star Pipe II Final Redetermination* at 18 and 43; *see also Star Pipe I Final Redetermination* at 12-13 and 30-31.

6


including the Petition.[28]  In any event, because the Court has held that the evidence in the ITC Report suggests that the ITC considered ductile iron flanged fittings used for waterworks to be generally excluded from the scope of the *Order* and that the exclusion extends to ductile iron flanges for use in waterworks, under respectful protest, we are implementing the Court's findings.

### 3. AWWA Specifications

The Court held that "Commerce reached certain findings pertaining to AWWA C110 and C115 that are not supported by substantial evidence on the record of this proceeding."[29]  Although we disagree with the Court's opinion, under respectful protest, we have modified our findings to comply with the Court's order, as discussed below.

In the *Star Pipe II Final Redetermination*, Commerce found that the exclusion for "{d}uctile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153..."[30] was limited to three types of products made to the two specifically identified AWWA standards.[31]  The Court held that Commerce could not rely on the specific exclusion in the scope of the *Order* as a reflection of the petitioners' intent to limit the exclusion, because the exclusion was not included in the original iteration of the scope in the Petition.[32]

As a result of the holding above, the Court found that Star Pipe's flanges that are made to the AWWA C115 standard for flanges have the same physical and chemical properties as ductile iron fittings made to AWWA C110 and the two standards are closely interrelated.[33]  Based on

---

[28] *See Star Pipe II Final Redetermination* at 9-17.
[29] *See Star Pipe III* at 28.
[30] *See Order*.
[31] *See, e.g.*, *Star Pipe II Final Redetermination* at 23.
[32] *See Star Pipe III* at 21.
[33] *Id.* at 28-29.

the Court's finding, and in review of the entirety of the Court's decision, we find, under respectful protest, that Commerce must include in its AWWA C110 exclusion for pipe fittings with certain ends Star Pipe's flanges that are made to the AWWA C115 standard for flanges, because the two standards have the same physical characteristics and reference each other.  The Court also held that the type of ending of the pipe fitting appears to be superfluous, nullifying explicit exclusion language in the scope of the *Order*.[34]  While we agree that the two standards have conforming physical characteristics and reference each other, they each respectively represent what Commerce has found and the Court has agreed to be separate and distinct pipe fittings, *i.e.*, fittings with MJ or flanged ends made to AWWA C110 and flanges made to AWWA C115.[35]  We, therefore, respectfully disagree with the Court's finding that such evidence suggests that the exclusion in the scope language should be extended to exclude any other AWWA standard because the physical characteristics may be the same or overlap when they explicitly cover separate pipe fittings.  We also respectfully disagree that the pipe fitting endings in the scope exclusion language is superfluous.  However, under respectful protest, we are no longer relying on arguments made in the *Star Pipe II Final Redetermination* on this issue to support our determination as to Star Pipe's flanges.

Additionally, the Court observed that references to flanges as items distinct from fittings in the AWWA C115 specification document suggests that the developers of the standards considered flanges to comprise a class or kind of merchandise different than the products they identified as fittings.[36]  However, we note that the fact that the AWWA standard system issues

---

[34] *Id.* at 33 ("{A}ccording to uncontradicted record evidence, all ductile iron fittings produced to AWWA C110 are, necessarily, described by the AWWA scope exclusion.  As to AWWA C110, the scope language providing the exclusion for certain ductile iron fittings has language requiring MJ, push-on, or flanged ends that appears to be superfluous, and with respect to the AWWA standards the scope exclusion is broader than it might seem at first glance.")
[35] *See Star Pipe II* at 15.
[36] *See Star Pipe III* at 30 (citing Star Pipe Scope Request at Exhibit 3).

specific separate standards for different pipe fittings does not overcome or supplant Commerce's statutory "class or kind" finding from the investigation, which requires a different kind of analysis. That said, although we disagree with the Court's conclusions, we are implementing its opinion, under respectful protest, and finding that Star Pipe's AWWA C115 flanges are included within the AWWA C110 exclusion language within the scope of the *Order*.

The Court also observed that certain evidence contradicts Star Pipe's claim with respect to all products in its scope request. Specifically, record evidence concerning two of Star Pipe's 11 flanges subject to the instant scope inquiry indicates that they are used with pipe with diameters smaller than three inches,[37] whereas the AWWA C115 standard applies to flanges for pipe with outer diameters that are a minimum of three inches.[38] Therefore, we are not finding the two flanges with diameters less than three inches to fall under the AWWA C110 exclusion because they do not meet the AWWA C115 standard. However, we are finding them to be excluded based on the Court's holding concerning a general waterworks end use exclusion.

### III.   FINAL RESULTS OF REDETERMINATION

As described above, we find that Star Pipe's flanges are pipe fittings that have the same physical characteristics as pipe fittings subject to the scope of the *Order*. Further, we have accepted, under respectful protest, the Court's findings regarding end use criteria for pipe fittings in the Petition and waterworks end use criteria in the ITC Report, as well as the Court's expansion of the AWWA C110 standard to also include products made to the AWWA C115 standard. Based on the above analysis, we conclude that the 11 ductile iron flanges subject to Star Pipe's scope request are outside the scope of the *Order*.

---

[37] *See* Star Pipe Scope Request at Exhibit 1 (The flanges identified by product codes FLD02SP and FLDTFS02 are for pipes with an outside diameter of 2.5 inches).
[38] *Id.* at Exhibit 3 ("Flanges shall conform to the dimensions shown in Table 2 or 3 and {(pertaining to flanges with a minimum nominal pipe size of three inches)}….")

9

Pursuant to 19 CFR 351.225(k)(1), Commerce must take into account the following factors when conducting a scope ruling under this provision: "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary {of Commerce} (including prior scope determinations) and the {U.S. International Trade} Commission."[39]  In this proceeding, pursuant to the Court's order, Commerce has further elaborated on descriptions of the merchandise contained in the scope, the Petition, and the ITC's determination in its investigation.  These materials, along with other information from the investigation, Star Pipe's scope request, and the Court's holdings are dispositive as to whether Star Pipe's 11 ductile iron flanges that are the subject of the relevant scope inquiry are pipe fittings subject to the *Order*.  Accordingly, we find it unnecessary to conduct an analysis under 19 CFR 351.225(k)(2).

## IV.   COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On November 8, 2021, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment on the *Draft Results*.[40]  Commerce received comments from the petitioner[41] and Star Pipe.[42]  These comments are addressed below.  After considering the petitioner's and Star Pipe's comments, we have not made any changes to our conclusion in the *Draft Results* in these final results of redetermination.

---

[39] *See* 19 CFR 351.225 (k)(1).
[40] *See* Draft Results of Redetermination Pursuant to Court Order, *Star Pipe Products v. United States and Anvil International*, Court No. 17-00236, Slip Op. 21-110 (CIT August 26, 2021) (*Draft Results*).
[41] *See* Petitioner's Letter, "Non-Malleable Cast Iron Pipe Fittings from The People's Republic Of China/Comments On Draft Results Of Third Redetermination," dated November 15, 2021 (Petitioner Comments).  Anvil, which reported that it changed its name to ASC Engineered Solutions, LLC on April 5, 2021, submitted comments on the *Draft Results*.  Ward has not filed any submission on the record of the Star Pipe scope inquiry proceeding.  Accordingly, for ease of reference, we refer to Anvil as the petitioner.
[42] *See* Star Pipe's Letter, "Star Pipe Comments on Third Draft Remand Comments in the Scope Inquiry on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated November 15, 2021 (Star Pipe Comments).

**Issue 1:** **Whether Star Pipe's Flanges Have The Same Physical Characteristics As Pipe Fittings In The First Paragraph Of The Scope**

**Petitioner's Comments:**

The petitioner argues that Commerce's conclusion in the *Draft Results* that "Star Pipe's flanges are pipe fittings that have the same physical characteristics as those described in the first paragraph of the scope" is correct.[43] Moreover, the petitioner contends that the Star Pipe Scope Ruling, as well as Commerce's conclusions in the first and second remand redeterminations, "were supported by substantial evidence and in accordance with law."[44] Accordingly, the petitioner maintains that the Court should have affirmed each of those decisions.[45]

**Star Pipe's Comments:**

Star Pipe maintains that a plain reading of the first paragraph of the scope does not support Commerce's finding that its flanges meet the physical characteristic requirements therein, because Commerce has limited its analysis to the outer dimensions and threading characteristics in the scope.[46] Further, Star Pipe argues that Commerce's finding fails to comply with the Court's opinion that the scope language does not provide a definition of the term "pipe fittings."[47] Notwithstanding these determinations, Star Pipe agrees with Commerce's conclusion that it should reexamine the sources under 19 CFR 351.225(k)(1), which support a finding that its flanges are outside the scope of the *Order*.[48]

---

[43] *See* Petitioner Comments at 1.
[44] *Id.* at 3.
[45] *Id.*
[46] *See* Star Pipe Comments at 1-2.
[47] *Id.* at 2.
[48] *Id.*

**Commerce's Position:**

As Commerce has previously addressed in the initial scope ruling as well as the first and second final remand redeterminations, Star Pipe's ductile iron flanges fall within the first clause of the first sentence of the second paragraph of the scope because they are "{f}ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above."[49] Additionally, we have established that Star Pipe's flanges meet the description of pipe fittings contained in the first paragraph of the scope because they are a type of ductile iron fitting with an inside diameter between ¼ inch and six inches. Moreover, the first paragraph of the scope states that fittings are covered "regardless of industry or proprietary specifications."[50] Therefore, there is no need to determine whether Star Pipe's flanges are produced or threaded to any of the ASME and ASTM specifications listed in the scope, or are UL certified.

In *Star Pipe III*, the Court found that Commerce reasonably interpreted the meaning of the term "pipe fittings" in the Petition and scope language to generally encompass flanges.[51] Accordingly, Commerce was able to evaluate whether Star Pipe's flanges were pipe fittings within the meaning of the scope, despite the absence of an explicit definition for the term "pipe fittings" therein. We have determined, based on the plain language of the scope of the *Order* and supported by evidence in a source under 19 CFR 351.225(k)(1), that Star Pipe's 11 ductile iron flanges have the same physical characteristics as pipe fittings described in the first paragraph of the scope. However, as explained in the *Draft Results*, in light of the Court's holding, we are

---

[49] *See* Star Pipe Scope Ruling at 12; *see also Star Pipe I Final Redetermination* at 4-5; and *Star Pipe II Final Redetermination* at 5.
[50] *See Order*.
[51] *See Star Pipe III* at 17.

12

finding, under respectful protest, that Star Pipe's 11 ductile iron flanges are outside the scope of the *Order*.

**Issue 2:      Whether Pipe Fittings For Waterworks Are Excluded From The Scope**

**Petitioner's Comments:**

According to the petitioner, any intended end use for Star Pipe's flanges is irrelevant to Commerce's scope analysis.[52] Additionally, the petitioner notes that the Petition stated that subject fittings may be used in applications other than fire protection and steam heat conveyance systems, and the end use language in the Petition was removed in a subsequent amendment to the Petition.[53] Therefore, the petitioner disagrees with Commerce's conclusion in the *Draft Results* that Star Pipe's flanges are outside the scope of the *Order*, and asserts that Commerce should not find there is an exclusion for pipe fittings used in water supply and waterworks applications.[54] Alternatively, the petitioner argues that Commerce should continue to make its findings regarding the relevancy of end use to this proceeding under protest, to maintain the government's ability to appeal the Court's rulings to the Court of Appeals for the Federal Circuit.[55]

**Star Pipe's Comments:**

Star Pipe agrees with Commerce's finding that its flanges are not covered by the scope because they are used in waterworks applications, and are not intended for use in the traditional non-malleable pipe fitting applications referenced in the Petition.[56] Moreover, Star Pipe asserts that substantial evidence in the Petition supports that finding.[57] Finally, Star Pipe notes that

---

[52] *See* Petitioner Comments at 2.
[53] *Id.* (citing Star Pipe Scope Ruling at Attachment 4, page 3, fn. 5).
[54] *Id.*
[55] *Id.*
[56] *See* Star Pipe Comments at 2.
[57] *Id.* (citing *Star Pipe III* at 22-23 ("{T}here is no suggestion in the Petition of an intent on the part of the two petitioners, Anvil and Ward, that some ductile iron products made to AWWA standards for the water works industry would be within the proposed scope of the investigation and others would not."))

evidence in the ITC Report suggests that "the ITC may have considered ductile iron goods produced to AWWA standards for water supply and waste water applications to be excluded from the domestic like product."[58]

**Commerce's Position:**

The petitioner is correct that Commerce requested that Anvil and Ward remove end use language from the scope of the Petition,[59] and the resulting scope of the *Order* contains no end use requirement. This is because Commerce typically does not include end use in scope language, as such requirements could make the scope difficult for U.S. Customs and Broder Protection to administer at the time of entry. However, while the scope does not preclude fittings for waterworks applications from also being covered by the scope, the Court found that certain evidence in the Petition and ITC Report indicate that pipe fittings produced for waterworks applications are excluded.[60] We disagree with the Court's opinion, but continue to implement the Court's finding, under respectful protest, for the final results of redetermination.

**Issue 3:** Whether An Exclusion For Ductile Iron Flanged Fittings For Waterworks Use Extends To Ductile Iron Flanges For Waterworks Use

**Star Pipe's Comments:**

Star Pipe agrees with Commerce's finding in the *Draft Results* that evidence in the ITC Report indicates that the ITC considered ductile iron flanged fittings used in waterworks applications to be excluded from the scope and, therefore, ductile iron flanges for waterworks are likewise excluded.[61] Accordingly, Star Pipe argues that this determination is supported by substantial evidence on the record of this proceeding.[62] However, Star Pipe disputes

---

[58] *Id.* (citing *Star Pipe III* at 27).
[59] *See* Star Pipe Scope Ruling at Attachment 4, page 3, fn. 5.
[60] *See Star Pipe III* at 22-27.
[61] *See* Star Pipe Comments at 3.
[62] *Id.* at 4.

Commerce's argument that it previously analyzed evidence in the ITC Report regarding the potential exclusion for all ductile iron flanged fittings, as well as the relevancy of this evidence to whether ductile iron flanges are included in the scope, as the ITC Report did not discuss flanges.[63]

      The petitioner did not provide any comment.

**Commerce's Position:**

We disagree with Star Pipe's argument that we failed to analyze evidence in the ITC Report that is relevant to the ITC's understanding of certain ductile iron fittings. Throughout this proceeding, Commerce has evaluated the evidence in the ITC Report along with the other sources under 19 CFR 351.225(k)(1), and we have determined that, although flanges share certain physical characteristics with flanged fittings, they are distinct products and the ITC's interpretation of whether the scope encompasses any ductile iron *flanged fittings* is not probative to the question of whether the ITC would have considered ductile iron *flanges* to likewise be excluded from the scope of the domestic like product.[64]

Because the ITC did not address whether ductile iron flanges or flanges in general were included in the scope of its material injury investigation, we previously found that evidence in the ITC Report concerning ductile iron flanged fittings used in waterworks applications is not dispositive to the question of whether the particular flanges at issue in the instant scope inquiry are subject to the scope of the *Order*.[65] Nevertheless, we have reconsidered this record evidence and have accepted the Court's finding regarding the ITC's presumed understanding of ductile iron flanges, under respectful protest. Accordingly, we continue to find that the evidence

---

[63] *Id.* at 3-4.
[64] *See, e.g.*, *Star Pipe II Final Redetermination* at 18 and 43; and *Star Pipe I Final Redetermination* at 12-13 and 30-31.
[65] *Id.*

15

suggests that the ITC considered ductile iron flanged fittings used for waterworks to be generally excluded from the scope of the *Order* and that the exclusion extends to ductile iron flanges for use in waterworks, under respectful protest.

**Issue 4:**      **Whether The Exclusion For Ductile Iron Fittings With Certain Ends Made To AWWA C110 Extends To Ductile Iron Flanges Made To AWWA C115**

**Petitioner's Comments:**

The petitioner contends that the exclusion from the scope for certain ductile iron fittings made to AWWA C110 does not encompass Star Pipe's flanges that are made to AWWA C115.[66] Rather, the petitioner maintains that the exclusion in the scope "is specific and must be read narrowly."[67] The petitioner also notes that, at the time of Commerce's initial investigation, Anvil and Ward were aware of the existence of the AWWA C115 standard and decided to only exclude certain ductile iron fittings made to AWWA C110 and AWWA C153 from the scope of the *Order*.[68] Finally, the petitioner argues that if Commerce continues to determine that Star Pipe's flanges are excluded from the scope, Commerce should continue to make that finding under protest.[69]

**Star Pipe's Comments:**

Star Pipe argues that substantial record evidence supports Commerce's determination that the exclusion for certain fittings made to AWWA C110 applies to Star Pipe's flanges made to AWWA C115 "because the two standards have the same physical characteristics and reference each other."[70] However, Star Pipe contends that the Court already addressed Commerce's arguments in the *Draft Results* that: (1) the two standards apply to different types of pipe

---

[66] *See* Petitioner Comments at 2-3.
[67] *Id.* at 3.
[68] *Id.*
[69] *Id.*
[70] *See* Star Pipe Comments at 4.

fittings; and (2) that references to ductile iron fittings with certain ends in the AWWA C110 scope exclusion is not superfluous, which do not detract from the Court's findings regarding the AWWA standards.[71]  Additionally, regarding Commerce's argument in the *Draft Results* that information on the AWWA standards "does not overcome or supplant Commerce's statutory 'class or kind'" analysis, Star Pipe asserts that Commerce must consider evidence of how the waterworks industry defined and understood flanges and flanged fittings to be probative to the question of whether ductile iron flanges were intended to be covered by the scope of the investigation and resulting *Order*.[72]

**Commerce's Position:**

As an initial matter, as stated above, we respectfully disagree with the Court's finding that Commerce must include Star Pipe's nine flanges that are made to the AWWA C115 standard for flanges in the AWWA C110 exclusion for pipe fittings with certain ends. Particularly, we find that it is not appropriate to extend an exclusion for ductile iron flanged fittings with certain endings and made to AWWA C110 specifications to ductile iron flanges made to AWWA C115 specifications because, although the fittings may have the same or overlapping physical and chemical properties, the AWWA C110 exclusion explicitly covers separate pipe fittings from the AWWA C115 exclusion.  However, we continue to implement the Court's finding, under respectful protest, for the final results of redetermination.  Furthermore, while we respectfully disagree that the exclusion language for pipe fitting endings is superfluous, under respectful protest, we continue to implement the Court's finding and are no longer relying on arguments made in the *Star Pipe II Final Redetermination* on this issue to support our determination as to Star Pipe's flanges.

---

[71] *Id.* (citing Star Pipe III at 28-33).
[72] *Id.* at 4-5.

With respect to Star Pipe's argument that Commerce must consider in its scope analysis how the waterworks industry understands flanges and flanged fittings, we disagree. There is no evidence on the record that interested parties, including the industries that produce and use pipe fittings, presented information to Commerce that would identify flanges as a separate class or kind of product from the pipe fittings subject to the scope of the investigation. Moreover, 19 CFR 351.225(k)(1) instructs Commerce to take into account the following factors when conducting a scope ruling under this provision: "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary {of Commerce} (including prior scope determinations) and the {U.S. International Trade} Commission." Therefore, we continue to find that the issuance of separate standards for distinct types of pipe fittings by the AWWA does not overcome or supplant Commerce's statutory "class or kind" finding from the investigation and this evidence is not probative to the question in this scope inquiry. However, although we disagree with the Court's conclusions on this issue, we are implementing its opinion, under respectful protest, and find that the AWWA C110 exclusion for certain pipe fittings in the scope extends to Star Pipe's nine flanges made to AWWA C115.

**Issue 5:    Whether Star Pipe's Flanges With Diameters Smaller Than Three Inches Are Outside The Scope**

**Star Pipe's Comments:**

Star Pipe agrees with Commerce's finding in the *Draft Results* that, based on substantial record evidence, each of Star Pipe's 11 ductile iron flanges, regardless of diameter, are outside the scope of the *Order*.[73] Further, Star Pipe argues that if Commerce determines that its flanges

---

[73] *See* Star Pipe Comments at 5.

are covered by the scope, Commerce should then conduct an inquiry under 19 CFR 351.225(k)(2) and examine the evidence contained within Star Pipe's scope request.[74]

The petitioner did not provide any comment.

**Commerce's Position:**

As discussed above, we disagree with the Court's finding that the Petition and ITC Report indicate that pipe fittings produced for waterworks applications are excluded. However, under respectful protest, we are implementing the Court's opinion. Because Star Pipe's flanges are used in water and wastewater industries and are generally not used in the traditional non-malleable pipe fitting applications listed in the Petition, under respectful protest, we find that each of Star Pipe's 11 ductile iron flanges are excluded from the scope of the *Order*. Accordingly, we find it unnecessary to conduct an analysis under 19 CFR 351.225(k)(2).

## V.   CONCLUSION

Based on the above analysis, Commerce continues to find Star Pipe's ductile iron flanges to be outside the scope of the AD order on pipe fittings from China. Should the Court sustain these Final Results of Redetermination, we will issue a revised scope ruling accordingly.

12/15/2021

X _____

Signed by: RYAN MAJERUS

_____
Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations,
 performing the non-exclusive functions and duties of the
 Assistant Secretary for Enforcement and Compliance

---

[74] *Id.*