## UNITED STATES COURT OF INTERNATIONAL TRADE

### BEFORE: THE HONORABLE TIMOTHY C. STANCEU, JUDGE

```
————————————————————————————————
                                        x
STAR PIPE PRODUCTS,                     :
                                        :
                                        :
                Plaintiff,              :
                                        :
        v.                              :
                                        :
UNITED STATES,                          :
                                        :       Court No. 17-00236
                Defendant,              :
                                        :
        and                             :
                                        :
ASC ENGINEERED SOLUTIONS, LLC,          :
                                        :
                Defendant-Intervenor.   :
————————————————————————————————x
```

### STAR PIPE PRODUCTS' COMMENTS ON THE THIRD FINAL REMAND

### REDETERMINATION

Francis J. Sailer
*Ned H. Marshak
Kavita Mohan

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP
1201 New York Ave., NW
Suite 650
Washington, DC 20005
(202) 783-6881
and
*599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4400

*Counsel for Plaintiff Star Pipe Products*

January 21, 2022

# TABLE OF CONTENTS

I.    COMMERCE'S FINDING THAT STAR PIPE'S FLANGES ARE COVERED BY THE FIRST PARAGRAPH OF THE SCOPE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ........................................................................... 1

II.   THE K(1) SOURCES SUPPORT COMMERCE'S CONCLUSION THAT GOODS PRODUCED TO STANDARDS FOR THE WATER WORKS INDUSTRY WERE INTENDED TO BE OUTSIDE THE SCOPE ........................... 3

III.  THE ITC REPORT SUPPORTS A CONCLUSION THAT STAR PIPE'S FLANGES ARE OUT OF SCOPE ................................................................. 5

IV.   THE RECORD SUPPORTS A FINDING THAT AWWA C115 FLANGES ARE EXCLUDED FROM THE SCOPE ................................................................ 6

V.    ALL OF STAR PIPE'S PRODUCTS SHOULD BE EXCLUDED FROM THE SCOPE OF THE ORDER BASED ON THE (K)(1) FACTORS ................................. 8

VI.   CONCLUSION ........................................................................................ 9

Plaintiff Star Pipe Products ("Star Pipe") hereby comments on the U.S. Department of Commerce's ("Commerce") Third Final Remand Redetermination filed with this Court on December 22, 2021 ("Third Remand Results") (Docket Entry #96),[1] issued as a result of the Court of International Trade's decision in *Star Pipe Products v. United States,* Court No. 17-00236, Slip Op. 21-110 (Aug. 26, 2021) ("*Star Pipe III*"). In the Third Remand Results, Commerce finds "under respectful protest" that all 11 of the ductile iron flanges subject to Star Pipe's scope request are outside the scope of the Order on non-malleable cast iron pipe fittings from the People's Republic of China. Star Pipe agrees with Commerce's conclusion finding the products out of scope, as this conclusion is in accordance with the Court's decision in *Star Pipe III* and is also the only reasonable outcome based on substantial record evidence. However, as it did in its comments on Commerce's Draft Remand Results,[2] Star Pipe disagrees with Commerce's issuance of this decision under protest and further disagrees with assertions made by Commerce that the record could support an alternative conclusion.[3]

## I.    COMMERCE'S FINDING THAT STAR PIPE'S FLANGES ARE COVERED BY THE FIRST PARAGRAPH OF THE SCOPE IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Commerce states that it continues "to find that Star Pipe's flanges are pipe fittings that have the same physical characteristics as those fittings described in the first paragraph of the scope, the language of which is controlling."[4] As Star Pipe has explained in its prior submissions, record

---

[1] Documents contained in the administrative record for the third remand proceeding are referenced as REM III CR XX or REM III PR XX.

[2] REM III PR 4.

[3] Star Pipe incorporates in these remand comments its prior comments on the remand results filed after the Court's decisions in *Star Pipe Products v. United States*, 365 F. Supp. 3d 1277 (Ct. Int'l Trade 2019) ("*Star Pipe I*") and *Star Pipe Prod. v. United States*, 463 F. Supp. 3d 1366 (Ct. Int'l Trade 2020) ("*Star Pipe II*"), as well as arguments made in its Memorandum of Law in Support of its 56.2 Motion, and Reply Brief.

[4] Third Remand Results at 4, 12.

evidence does not support this position. Commerce continues to erroneously rely merely on the dimensional criteria provided in the first sentence of the scope and ignores the remaining language of the first paragraph. Moreover, Commerce's position is inconsistent with the Court's decision, which held that: "The scope language of the Order does not define the term 'pipe fittings' (or the term 'fittings,' used synonymously in the scope language)."[5] In addition,

> The scope language, like the text of the Petition, makes no mention of flanges. The list of exemplars ("elbows, ells, tees, crosses, and reducers as well as flanged fittings"), while not exhaustive, expressly mentions flanged fittings but not flanges. See Order, 68 Fed. Reg. at 16,765; Petition 3. Also, the "flanged fittings" reference differs from the other exemplars in referring to the method of attachment of a fitting to another good. . . . ***In doing so, the language poses the question of why a good with a defining physical characteristic in common with a flanged fitting, i.e., a flange to allow attachment to other goods with flanges, was not also mentioned in the exemplars.*** This is not to conclude that the scope language, when read according to plain meaning, must be interpreted to exclude flanges***; rather, it is to recognize that the scope language by itself does not resolve the issue, and Commerce, therefore, is required to examine the other relevant evidence on the record***.[6]

Thus, in accordance with the Court's decision, Star Pipe agrees that Commerce was required to reconsider the (k)(1) factors.

Commerce's reference to the Petition in an erroneous attempt to support its argument that Star Pipe's flanges are covered under the *plain language of the scope*,[7] proves exactly why an evaluation of the (k)(1) factors is necessary. Furthermore, Commerce may not rely only on certain evidence under one of the (k)(1) sources to support its conclusion while ignoring other substantial evidence in the (k)(1) sources that detracts from its conclusion. To determine if

---

[5] *Star Pipe III* at 16.

[6] *Id*. at 18 (emphases added).

[7] *See* Third Remand Results at 4 ("Although the narrative of the Petition, like the language of the scope of the Order, does not mention flanges, we note that product catalogues from Anvil International LLC (Anvil) and Ward Manufacturing Inc., the petitioners in the investigation, both referenced flanges as a type of pipe fitting in several instances in the Petition").

substantial evidence exists, the record must be reviewed "as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'"[8]

Commerce argues that the Court "found that Commerce reasonably interpreted the meaning of pipe fittings in the Petition and scope language to generally encompass flanges."[9] However, this is a selective reading of the Court's holding. The Court also explained:

> Nevertheless, the fact that flanges are listed in the Anvil and Ward brochures, standing alone, ***is not determinative of whether the scope language to be interpreted includes flanges in general, or the particular flanges at issue here.*** The scope language, like the text of the Petition, makes no mention of flanges.[10]

For these reasons, it is Star Pipe's continued position that Commerce's finding that "Star Pipe's 11 ductile iron flanges have the same physical characteristics as pipe fittings described in the first paragraph of the scope"[11] is unsupported by substantial evidence and not in accordance with the Court's decision in *Star Pipe III*. However, Star Pipe agrees with Commerce's decision to examine the (k)(1) sources in accordance with the Court's opinion.

## II.    THE K(1) SOURCES SUPPORT COMMERCE'S CONCLUSION THAT GOODS PRODUCED TO STANDARDS FOR THE WATER WORKS INDUSTRY WERE INTENDED TO BE OUTSIDE THE SCOPE

Star Pipe agrees with Commerce's conclusion that Star Pipe's flanges are outside the scope of the Order because "Star Pipe's flanges are used in water and wastewater industries and are . . . not used in the traditional non-malleable pipe fitting applications listed in the Petition."[12] This

---

[8] *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003), *citing Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed.Cir.1984).

[9] Third Remand Results at 12, *citing Star Pipe III* at 17.

[10] *Star Pipe III* at 18 (emphases added).

[11] Third Remand Results at 12.

[12] Third Remand Results at 5.

conclusion is supported by substantial evidence and by the Court's decisions in this case. As the

Court explained:

> The Petition, in stating that "{v}irtually all subject fittings are used in fire protection systems and in the steam heat conveyance systems used in old inner cities," is at least a suggestion that goods produced to standards for the water works industry were intended to be outside the scope of the investigation. See Petition 4. It is possible that the Department's intent was to distinguish goods produced for that industry from subject merchandise by requiring the excluded products to be produced to AWWA standards. But contrary to the rationale Commerce put forward, ***there is no suggestion in the Petition of an intent on the part of the two petitioners, Anvil and Ward, that some ductile iron products made to AWWA standards for the water works industry would be within the proposed scope of the investigation and others would not. Nor is there any indication in the text of the Petition that the two petitioners contemplated that flanges would be within the scope of the proposed investigation.*** And while the brochures are evidence that the petitioners generally considered flanges to be pipe fittings, there is no indication, in either the text of the Petition or the exhibits, that the petitioners specifically intended for ductile iron flanges, or in particular those such as Star Pipe's— which Star Pipe described as threaded flanges produced for the water works industry— to be within the scope of their proposed investigation.[13]

Furthermore, as the Court also recognized, the "language from the staff report, which was

before the {International Trade} Commission when it made its affirmative threat determination,

suggests that the ITC may have considered ductile iron goods produced to AWWA standards for

water supply and waste water applications to be excluded from the domestic like product."[14]

In response to comments made by Petitioner to the Draft Remand Results that Commerce

asked Petitioner to remove language relating to end use during the investigation, Commerce

argues that "petitioner is correct that Commerce requested Anvil and Ward remove end use

language from the scope of the Petition, and the resulting scope of the Order contains no end use

---

[13] *Star Pipe III* at 22-23 (emphasis added).

[14] *Id*. at 27.

requirement."[15] However, the fact that Commerce may have requested Anvil and Ward to remove end use language from the scope is irrelevant as to whether Star Pipe's ductile iron flanges were contemplated as covered by the scope. The absence of language relating to end use does not necessitate a finding that products never contemplated by the scope are in scope. Moreover, the end use referenced in the description of the scope in the Petition was: "fire protection systems and in the steam heat conveyance systems used in old inner cities."[16] The fact that this was the only end use contemplated by the Petition in fact supports Star Pipe's position. As noted above, "there is no suggestion in the Petition of an intent on the part of the two petitioners, Anvil and Ward, that some ductile iron products made to AWWA standards for the water works industry would be within the proposed scope of the investigation and others would not."[17]

### III.   THE ITC REPORT SUPPORTS A CONCLUSION THAT STAR PIPE'S FLANGES ARE OUT OF SCOPE

Star Pipe agrees with Commerce's determination to implement the Court's finding that "evidence in the ITC Report suggests that the ITC considered ductile iron flanged fittings used for waterworks to be generally excluded from the scope of the Order and that the exclusion extends to ductile iron flanges for use in waterworks."[18]

Commerce states that it disagrees with the Court's finding that Commerce "failed to analyze the ITC Report's discussion of the possible exclusion for ductile iron flanged fittings and its relationship to ductile iron flanges."[19] Commerce argues that it "evaluated evidence in the ITC Report that, according to the Court's Order in *Star Pipe II*, would detract from our finding that

---

[15] Third Remand Results at 14.

[16] Petition at 4 (REM PR 30).

[17] *Star Pipe III* at 22-23.

[18] Third Remand Results at 7.

[19] Third Remand Results at 6.

flanges are covered by the Order, and weighed that evidence with other record information, including the Petition."[20] In response to Star Pipe's comments on its Draft Remand Results, Commerce repeats these assertions and states that it previously "found that evidence in the ITC Report concerning ductile iron flanged fittings used in waterworks applications is not dispositive to the question of whether the particular flanges at issue in the instant scope inquiry are subject to the scope of the Order."[21] However, as the Court explained in *Star Pipe III*, Commerce's determination in its Second Remand Results is not supported by substantial evidence:

> While the conclusion that the ITC investigated ductile iron pipe fittings is supported by the ITC Report, the conclusion that the ITC did not exclude ductile iron flanges from its material injury investigation is speculative and misleading: there is no evidence in the ITC Report that the ITC considered flanges, which the ITC did not discuss, to be merchandise within the scope of its investigation. Moreover, Commerce fails to analyze the evidence that the ITC defined the domestic like product as corresponding to the scope of the investigation and, at the same time, declined to broaden the domestic like product to include any ductile flanged fittings".[22]

Commerce's decision in the Third Remand Results to implement the Court's finding in *Star Pipe III* with respect to this issue is correct and supported by record evidence.

## IV. THE RECORD SUPPORTS A FINDING THAT AWWA C115 FLANGES ARE EXCLUDED FROM THE SCOPE

Commerce's decision to implement the Court's findings in *Star Pipe III* that it "must include in its AWWA C110 exclusion for pipe fittings with certain ends Star Pipe's flanges that are made to the AWWA C115 standard for flanges because the two standards have the same

---

[20] *Id*. at 6.

[21] Third Remand Results at 15.

[22] *Star Pipe III* at 24-26.

physical characteristics and reference each other"[23] is supported by substantial evidence and is in accordance with the Court's instructions in *Star Pipe III*.

However, in the Third Remand Results, Commerce also notes its continued disagreement with the Court that the scope language should be extended to include AWWA C115, positing that (1) the two standards "each respectively represent what Commerce has found and the Court has agreed to be separate and distinct pipe fittings, *i.e.*, fittings with MJ or flanged ends made to AWWA C110 and flanges made to AWWA C115;"[24] (2) "the pipe fitting endings in the scope exclusion language" is not superfluous;[25] and (3) "the AWWA standard system issues specific separate standards for different pipe fittings does not overcome or supplant Commerce's statutory 'class or kind' finding from the investigation, which requires a different kind of analysis."[26] With respect to items (1) and (2), the Court addressed these issues at length in *Star Pipe III* and nothing on the record of this case or argued by Commerce detracts from the Court's findings.[27] With respect to item (3), Commerce's "class or kind" finding cannot ignore how products are defined and understood by the relevant industry, as this is probative of what products were intended to be covered by the investigation and, as a result, would be subject to the Order.

In response to Star Pipe's comments to the Draft Remand Results, Commerce states that "there is no evidence on the record that interested parties . . . presented information to Commerce that would identify flanges as a separate class or kind of product from the pipe fittings subject to the scope of the investigation" and that the (k)(1) factors instruct Commerce to take into account

---

[23] Third Remand Results at 8.

[24] Third Remand Results at 8.

[25] *Id*.

[26] *Id*.

[27] *Star Pipe III* at 28-33.

"descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary . . . and the . . . Commission."[28] Commerce's argument is meritless as there is no record evidence in the plain language of the scope or in any of the (k)(1) factors that Star Pipe's flanges were contemplated to be within the same class or kind of product subject to the investigation. Furthermore, as the Court noted, "Commerce itself drafted the exclusion in terms of AWWA standards."[29] Commerce cannot make its "class or kind" determination in a vacuum without regard to industry standards.

## V.    ALL OF STAR PIPE'S PRODUCTS SHOULD BE EXCLUDED FROM THE SCOPE OF THE ORDER BASED ON THE (K)(1) FACTORS

Star Pipe agrees with Commerce that all of the products included in Star Pipe's Scope Ruling Request are excluded from the Order. Commerce correctly noted that even the two flanges with diameters less than three inches fall within the exclusion from the scope "based on the Court's holding concerning a general waterworks end use exclusion."[30]

In its comments on the Draft Remand Results, Star Pipe noted that if Commerce departed from its decision the Draft Remand Results and found that the (k)(1) factors were not dispositive as to whether its flanges were within the scope of the Order, then Commerce should conduct an analysis under the (k)(2) factors. This has been (and continues to be) Star Pipe's position at all times when the issue has presented itself. However, in its Third Remand Commerce found that it was "unnecessary to conduct an analysis under 19 C.F.R. 351.221(k)(2)" obviating the need to address this issue further.[31]

---

[28] Third Remand Results at 18, citing 19 C.F.R. 351.225(k)(1).

[29] *Star Pipe III* at 32.

[30] Third Remand Results at 9.

## VI.    CONCLUSION

Substantial record evidence and the Court's decision in *Star Pipe III,* as well as in *Star Pipe I* and *Star Pipe II*, support Commerce's conclusion that all 11 of Star Pipe's ductile iron flanges are excluded from the scope of the Order based on the (k)(1) factors. The Court should affirm Commerce's conclusion in its Third Remand Results, though not Commerce's reasoning to issue this decision under protest.

Respectfully submitted,

*/s/ Francis J. Sailer*
Francis J. Sailer
*Ned H. Marshak
Kavita Mohan

GRUNFELD, DESIDERIO, LEBOWITZ,
SILVERMAN & KLESTADT LLP

1201 New York Ave., NW
Suite 650
Washington, DC 20005
(202) 783-6881
and
*599 Lexington Avenue, 36th Floor
New York, NY 10022
(212) 557-4400

Dated: January 21, 2022

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chamber Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for consolidated Plaintiff Star Pipe Products' Comments on Third Remand Redetermination, as computed by Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt's word processing system Microsoft Word 2013, is 2,735 words, less than the word limit set by the Court's Rules.

*/s/ Kavita Mohan*
*Counsel for Plaintiff Star Pipe Products*

Dated: January 21, 2022

11447854_1