A-570-875
Remand Redetermination
Slip Op. 22-127
Scope Inquiry
Star Pipe Products – Non-Malleable Cast Iron Pipe Fittings from China
**Public Document**
E&C/OIV:  MC

***Star Pipe Products v. United States and Anvil International***
**Court No. 17-00236, Slip Op. 22-127 (November 18, 2022)**
**Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China**

**FINAL RESULTS OF REDETERMINATION
PURSUANT TO COURT REMAND**

## I.  SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of

redetermination pursuant to the remand order of the U.S. Court of International Trade (the Court)

in *Star Pipe IV*.[1]  These final results of redetermination pertain to the scope inquiry submitted by

Star Pipe Products (Star Pipe)[2] regarding whether its 11 ductile iron flanges (flanges) are pipe

fittings covered by the antidumping duty (AD) order on non-malleable cast iron pipe fittings

(pipe fittings) from the People's Republic of China (China).[3]  On December 15, 2021, pursuant

to the Court's third remand order in *Star Pipe III*,[4] Commerce issued its *Third Final Remand*, in

which Commerce determined, under protest, that Star Pipe's flanges were outside the scope of

the *Order*.[5]

---

[1] *See Star Pipe Products v. United States and ASC Engineered Solutions*, *LLC*, Court No. 17-00236, Slip Op. 22-127 (November 18, 2022) (*Star Pipe IV*).
[2] *See* Star Pipe's Letter, "Star Pipe Products Scope Request:  Ductile Iron Flanges Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China (A-570-875)," dated June 21, 2017 (Star Pipe Scope Request).
[3] *See Notice of Antidumping Duty Order:  Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China*, 68 FR 16765 (April 7, 2003) (*Order*).
[4] *See Star Pipe Products v. United States and Anvil International*, Court No. 17-00236, Slip Op. 21-110 (August 26, 2021) (*Star Pipe III*).
[5] *See Final Results of Redetermination Pursuant to Court Remand, Star Pipe Products vs. United States and Anvil International,* Court No. 17-00236, Slip Op. 21-110 (CIT August 26, 2021), dated December 15, 2021 (*Third Final Remand*), available at https://access.trade.gov/resources/remands/20-128.pdf.

In *Star Pipe III*, the Court held that Commerce's *Second Final Remand*[6] that Star Pipe's flanges are pipe fittings within the scope of the *Order* was not supported by substantial record evidence.[7]  Specifically, the Court explained that certain of Commerce's findings related to the scope language, Petition,[8] U.S. International Trade Commission (ITC) Report,[9] and exhibits to the Star Pipe Scope Request are not supported by substantial evidence, and that Commerce failed to address, or address in any meaningful way, certain evidence on the record that detracts from Commerce's determination that Star Pipe's ductile iron flanges were covered by the scope of the *Order*.[10]  Accordingly, the Court remanded to Commerce to issue a decision consistent with the Court's opinion, as described further below.

In *Star Pipe IV*, the Court stated that Commerce's *Third Final Remand* misconstrued aspects of the Court's decision in *Star Pipe III* and was not submitted in a form the Court could sustain upon judicial review.[11]  The Court, thus, directed Commerce to issue a new determination, in a form that would go into effect if sustained upon judicial review, determining whether Star Pipe's flanges are within the scope of the *Order*.[12]

In these final results of redetermination, we have continued to find, under respectful protest, that Star Pipe's flanges fall outside of the scope of the *Order*.  We have revised our analysis regarding *Star Pipe III* to be consistent with the Court's order in *Star Pipe IV*.

---

[6] *See Final Results of Redetermination Pursuant to Court Remand, Star Pipe Products v. United States*, Court No. 17-00236, Slip Op. 20-114 (CIT August 11, 2020), dated November 16, 2020 (*Second Final Remand*, referenced as Star Pipe II Final Redetermination in the section on "Comments on the Prior Draft Results of Redetermination," *infra*), available at https://access.trade.gov/resources/remands/20-114.pdf.

[7] *See Star Pipe III* at 16.

[8] *See* Petitioners' Letter, "Petition for Imposition of Antidumping Duties:  Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated February 21, 2002 (Petition).

[9] *See Non-Malleable Cast Iron Pipe Fittings from China*, Investigation No. 731-TA-990 (Final), USITC Pub. No. 3586, 2003 (ITC Report).

[10] *Id.* at 35-36.

[11] *See Star Pipe IV* at 3 and 15-18.

[12] *Id.*

Furthermore, consistent with *Star Pipe IV*, we have revised these final results of redetermination in a manner that more clearly defines Commerce's intentions with respect to the nature of these remand results.  Specifically, we are clarifying that we do not intend to issue a scope ruling or other agency determination subsequent to the Court's review of this remand redetermination. This remand redetermination serves as the agency determination and is subject to the Court's review.  Thus, if the Court affirms this redetermination, a *Federal Register* notice will be published stating that, consistent with the Court's holdings, Star Pipe's flanges are outside the scope of the *Order*.  Further, relevant instructions to U.S. Customs and Border Protection (CBP) giving effect to the determination, as sustained by the Court, will also be issued at that time as appropriate.

## II.   ANALYSIS

### 1.  Scope of the *Order*

The scope of the *Order* is as follows:

The products covered by this *Order* are finished and unfinished nonmalleable cast iron pipe fittings with an inside diameter ranging from ¼ inch to 6 inches, whether threaded or unthreaded, regardless of industry or proprietary specifications.  The subject fittings include elbows, ells, tees, crosses, and reducers as well as flanged fittings.  These pipe fittings are also known as "cast iron pipe fittings" or "gray iron pipe fittings."  These cast iron pipe fittings are normally produced to ASTM A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1 specifications.  Most building codes require that these products are Underwriters Laboratories (UL) certified.  The scope does not include cast iron soil pipe fittings or grooved fittings or grooved couplings.

Fittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above or which have the same physical characteristics and are produced to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to ASME B1.20.1 specifications and UL certified, regardless of metallurgical differences between gray and ductile iron, are also included in the scope of this *Order*.  These ductile fittings do not include grooved fittings or grooved couplings.  Ductile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced

to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153 are not included.

Imports of covered merchandise are classifiable in the Harmonized Tariff Schedule of the United States (HTSUS) under item numbers 7307.11.00.30, 7307.11.00.60, 7307.19.30.60 and 7307.19.30.85.  HTSUS subheadings are provided for convenience and customs purposes.  The written description of the scope of the *Order* is dispositive.

Commerce determined in the Star Pipe Scope Ruling that Star Pipe's ductile iron flanges fell within the first clause of the first sentence of the second paragraph of the scope because they were "{f}ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above."[13]  Star Pipe did not provide the inside diameter of its flanges, but did provide the measurements of the outside diameter of the pipes onto which each of these flanges fits.  For each of the 11 flanges, the outside diameters for the corresponding pipes onto which the flanges are attached measure between 2.5 and 4.8 inches.[14] Since flanges are fitted directly onto pipes, with little to no gap between the flange and the pipe, Commerce found that it was reasonable to assume that the inside diameters of Star Pipe's 11 flanges are also within 2.5 and 4.8 inches.  Accordingly, since the first paragraph of the *Order* covers pipe fittings with an inside diameter ranging from 1/4 inch to six inches, whether threaded or unthreaded, and Star Pipe's threaded flanges are within this diameter range, Commerce determined that Star Pipe's flanges had the same physical characteristics as those subject to the first paragraph of the scope.[15]

---

[13] *See* Memorandum, "Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China:  Request by Star Pipe Products," dated August 17, 2017 (Star Pipe Scope Ruling), at 12; *see also Final Results of Redetermination Pursuant to Court Remand, Star Pipe Products v. United States*, Court No. 17-00236, Slip Op. 19-20 (CIT February 13, 2019), dated June 27, 2019 (*First Final Remand*, referenced as Star Pipe I Final Redetermination in the section "Comments on the Prior Draft Results of Redetermination," *infra*), at 4-5, available at https://access.trade.gov/resources/remands/19-20.pdf; and *Second Final Remand* at 5.
[14] *See* Star Pipe Scope Request at Exhibit 1.
[15] *See First Final Remand* at 4-5; *see also Second Final Remand* at 5.

The Court in *Star Pipe III* explained that interpreting the term "pipe fittings" in the scope language "as generally encompassing flanges is not *per se* unreasonable."[16]  The Court also observed that flanges are not referenced in the scope language or the Petition in the list of exemplars of products that are included in the scope of the *Order*, whereas flanged fittings that share a physical characteristic with flanges are mentioned.[17]  The Court stated that

> In doing so, the language poses the question of why a good with a defining physical characteristic common with a flanged fitting, *i.e.*, a flange to allow attachment to other goods with flanges, was not also mentioned in the exemplars. This is not to conclude that the scope language, when read according to the plain meaning, must be interpreted to exclude flanges; rather, it is to recognize that the scope language by itself does not resolve the issue, and Commerce, therefore, is required to examine the other relevant evidence on the record.[18]

Although the narrative of the Petition, like the language of the scope of the *Order*, does not mention flanges, we note that product catalogues from Anvil International LLC (Anvil) and Ward Manufacturing Inc., the petitioners in the investigation, both referenced flanges as a type of pipe fitting in several instances in the Petition.[19]  The Court in *Star Pipe III* stated that,

> Because the scope of an antidumping duty investigation is substantially influenced by the investigative scope proposed in the petition, it was reasonable for Commerce to accord weight to this evidence in interpreting the meaning of the term 'pipe fittings' in the scope language.  Moreover, interpreting this term as used in the scope language as generally encompassing flanges is not *per se* unreasonable.[20]

However, in *Star Pipe III* the Court explained that the scope language did not clearly define "pipe fittings" as they relate to flanges, and thus Commerce's decision must be reviewed in light

---

[16] *See Star Pipe III* at 17.
[17] *Id.* at 18.
[18] *Id.*
[19] *See* Petition at Exhibit 2.  For example, in *Star Pipe II*, the Court observed that the Anvil pipe fittings product catalogue in the Petition "depicts a 'flange union gasket type' appearing to be similar to the flanges under consideration … {and} a 'floor flange' that resembles one of Star Pipe's flanges."  *See Star Pipe Products v. United States and Anvil International*, 463 F. Supp. 3d 1366 (2020) Court No. 17-00236, Slip Op. 20-114 (August 11, 2020) (*Star Pipe II*), at 8.
[20] *See Star Pipe III* at 17.

of the sources identified in 19 CFR 351.225(k)(1).  In accordance with the Court's opinion, we

further examined the sources under 19 CFR 351.225(k)(1), taking into account *Star Pipe III* and

*Star Pipe IV*, as discussed below.

### 2. End Use Exclusion for Waterworks in the 19 CFR 351.225(k)(1) Sources

The Court explained that the language in the Petition "is at least a suggestion that goods

produced to standards for the water works industry were intended to be outside the scope of the

investigation."[21]  Similarly, as discussed further below, the Court indicated that there is evidence

in the ITC Report that "strongly supports the view" that the ITC excluded all ductile iron flanged

fittings from its analysis,[22] and that such evidence informs other portions of the ITC Report

"suggest{ing} that the ITC may have considered ductile iron goods produced to AWWA

standards for water supply and waste water applications to be excluded from the domestic like

product."[23]  We respectfully disagree that the Petition and ITC Report indicate that all pipe

fittings produced for waterworks applications are excluded.  Because Star Pipe's flanges are used

in water and wastewater industries and are generally not used in the traditional non-malleable

pipe fitting applications listed in the Petition,[24] we are finding under respectful protest that this

evidence in the Petition and ITC Report supports that Star Pipe's flanges are excluded from the

scope of the *Order*.

### 3. Ductile Iron Flanged Fittings and Flanges

The Court also remanded aspects of Commerce's findings with respect to the ITC Report,

stating that "Commerce fails to analyze the evidence that the ITC defined the domestic like

product as corresponding to the scope of the investigation and, at the same time, declined to

---

[21] *Id.* at 22 (citing Petition at 4).

[22] *Id.* at 25.

[23] *Id.* at 27.

[24] *See* Star Pipe Scope Request at 10.

broaden the domestic like product to include any ductile flanged fittings."[25]  With respect to such

ductile iron fittings with flanged ends, the Court explained that record evidence "strongly

supports the view that the ITC excluded ductile flanged fittings from the unfairly trade imports

that it found to threaten to injure the domestic industry."[26]  In view of this finding, the Court

noted that pursuant to section 731 of the Tariff Act of 1930, as amended, Commerce may impose

antidumping duties only on those goods it determines are unfairly traded.[27]  The Court also noted

that ductile iron flanges "are shown by the record evidence to share a defining physical

characteristic with ductile flanged fittings, *i.e.*, the presence of a flange as a means of attachment

to another article."[28]  Further, referencing its earlier decisions, "{t}he {C}ourt identified

language in the ITC Report indicating that the ITC considered all flanged fittings made of ductile

cast iron to be excluded from the scope of the ITC's investigation, which suggested that ductile

iron flanges also were considered by the ITC to be outside that scope."[29]

The Court thus explained that Commerce failed to analyze the ITC Report's discussion of

the possible exclusion for ductile iron flanged fittings and its relationship to ductile iron

flanges.[30]  We respectfully disagree that Commerce did not address this evidence.  In both the

first and second remands, we evaluated the evidence in the ITC Report along with the other

sources under 19 CFR 351.225(k)(1) in discussing that flanges and flanged fittings are separate

and distinct products.[31]  As explained in the *Second Final Remand*, we evaluated evidence in the

ITC Report that, according to the Court's order in *Star Pipe II*, would detract from our finding

---

[25] *See Star Pipe III* at 24.
[26] *Id.* at 25.
[27] *Id.* at fn.6.
[28] *Id.* at 25-26.
[29] *Id.* at 24 (citing *Star Pipe Products v. United States and Anvil International*, Court No. 17-00236, Slip Op. 19-20 (February 13, 2019) (*Star Pipe I*), at 14-15).
[30] *Id.* at 24-25.
[31] *See Second Final Remand* at 18 and 43; *see also First Final Remand* at 12-13 and 30-31.

that flanges are covered by the *Order*, and weighed that evidence with other record information, including the Petition.[32]  In any event, in consideration of *Star Pipe I, Star Pipe II*, *Star Pipe III, and Star Pipe IV* and further review of the evidence on the record, under respectful protest, we find that the ITC Report or other sources identified in 19 CFR 351.225(k)(1) do not support a finding that Star Pipe's flanges are within the scope of the *Order*.

### 4.  AWWA Specifications

In *Star Pipe III*, the Court stated that "Commerce reached certain findings pertaining to AWWA C110 and C115 that are not supported by substantial evidence on the record of this proceeding."[33]  Although we disagree with the Court's observations, under respectful protest, we have modified our findings, as discussed below.

In the *Second Final Remand*, Commerce found that the scope exclusion for "{d}uctile cast iron fittings with mechanical joint ends (MJ), or push on ends (PO), or flanged ends and produced to American Water Works Association (AWWA) specifications AWWA C110 or AWWA C153…"[34] was limited to three types of products made to the two specifically identified AWWA standards.[35]  The Court indicated that Commerce could not rely on the specific exclusion in the scope of the *Order* as a reflection of the petitioners' intent to limit the exclusion, because the exclusion was not included in the original iteration of the scope in the Petition.[36]

The Court explained that Star Pipe's flanges that are made to the AWWA C115 standard for flanges have the same physical and chemical properties as ductile iron fittings made to

---

[32] *See Second Final Remand* at 9-17.
[33] *See Star Pipe III* at 28.
[34] *See Order*.
[35] *See, e.g.*, *Second Final Remand* at 23.
[36] *See Star Pipe III* at 21.

AWWA C110 and the two standards are closely interrelated.[37]  The Court also explained that the type of ending of the pipe fitting appears to be superfluous.[38]

     While we agree that the two standards have conforming physical characteristics and reference each other, they each respectively represent what Commerce has found to be separate and distinct pipe fittings, *i.e.*, fittings with MJ or flanged ends made to AWWA C110 and flanges made to AWWA C115.[39]  We, therefore, respectfully disagree that such evidence suggests that the exclusion in the scope language should be extended to exclude any other AWWA standard because the physical characteristics may be the same or overlap when they explicitly cover separate pipe fittings.  We also respectfully disagree that the pipe fitting endings in the scope exclusion language is superfluous.  However, under respectful protest, we are no longer relying on arguments made in the *Second Final Remand* on this issue to support our determination as to Star Pipe's flanges.

     Additionally, the Court observed that references to flanges as items distinct from fittings in the AWWA C115 specification document suggests that the developers of the standards considered flanges to comprise a class or kind of merchandise different than the products they identified as fittings.[40]  However, we note that the fact that the AWWA standard system issues specific separate standards for different pipe fittings does not overcome or supplant Commerce's statutory "class or kind" finding from the investigation, which requires a different kind of analysis.  That said, under respectful protest, we are finding that Star Pipe's AWWA C115

---

[37] *Id.* at 28-29.
[38] *Id.* at 33 ("{A}ccording to uncontradicted record evidence, all ductile iron fittings produced to AWWA C110 are, necessarily, described by the AWWA scope exclusion.  As to AWWA C110, the scope language providing the exclusion for certain ductile iron fittings has language requiring MJ, push-on, or flanged ends that appears to be superfluous, and with respect to the AWWA standards the scope exclusion is broader than it might seem at first glance.")
[39] *See Star Pipe II* at 15.
[40] *See Star Pipe III* at 30 (citing Star Pipe Scope Request at Exhibit 3).

flanges are covered by the AWWA C110 exclusion language contained in the scope of the *Order*.

The Court also observed that certain evidence contradicts Star Pipe's claim with respect to all products in its scope request. Specifically, record evidence concerning two of Star Pipe's 11 flanges subject to the instant scope inquiry indicates that they are used with pipe with diameters smaller than three inches,[41] whereas the AWWA C115 standard applies to flanges for pipe with outer diameters that are a minimum of three inches.[42] Therefore, we are not finding the two flanges with diameters less than three inches to fall under the AWWA C110 exclusion because they do not meet the AWWA C115 standard. However, we are nonetheless finding them to be excluded based on the analysis set forth above in sections 2 and 3 above.

## III.   FINAL RESULTS OF REDETERMINATION

As described above, upon review of all evidence contained on the record and the Court's statements in *Star Pipe I*, *Star Pipe II*, *Star Pipe III*, and *Star Pipe IV*, we find, under respectful protest, based on the above analysis of the scope language, Petition, and ITC Report that Star Pipe's flanges are not within the scope of the *Order*. Therefore, based on the above analysis, we conclude, under respectful protest, that the 11 ductile iron flanges subject to Star Pipe's scope request are outside the scope of the *Order*.

Pursuant to 19 CFR 351.225(k)(1), Commerce must take into account the following factors when conducting a scope ruling under this provision: "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary {of Commerce} (including prior scope determinations) and the {U.S. International

---

[41] *See* Star Pipe Scope Request at Exhibit 1 (The flanges identified by product codes FLD02SP and FLDTFS02 are for pipes with an outside diameter of 2.5 inches).

[42] *Id.* at Exhibit 3 ("Flanges shall conform to the dimensions shown in Table 2 or 3 and {(pertaining to flanges with a minimum nominal pipe size of three inches)} … .").

Trade} Commission."[43]  In this proceeding, taking into account *Star Pipe I*, *Star Pipe II*, *Star Pipe III*, and *Star Pipe IV*, Commerce has further elaborated on descriptions of the merchandise contained in the scope, the Petition, and the ITC's determination in its investigation.  These materials, along with other information from the investigation, Star Pipe's scope request, and the Court's holdings are dispositive as to whether Star Pipe's 11 ductile iron flanges that are the subject of the relevant scope inquiry are pipe fittings subject to the *Order*.  Accordingly, we find it unnecessary to conduct an analysis under 19 CFR 351.225(k)(2).  As a part of the *Third Final Remand*, we addressed comments from the petitioner[44] and Star Pipe,[45] which we have incorporated into this fourth final results of redetermination.

In *Star Pipe IV*, the Court states that in the *Third Final Remand*, Commerce concluded that the Court "reached certain 'findings,' expanded the AWWA C110 standard, and ordered Commerce to exclude Star Pipe's flanges from the *Order*."[46]  The Court stated that these conclusions by Commerce were incorrect and that the Court had, instead, directed Commerce to "reach its own ultimate determination based on 'a more comprehensive review of the relevant record evidence.'"[47]  In response to these comments from the Court, we find, based on the analysis above and under respectful protest, that Star Pipe's ductile iron flanges are outside the scope of the *Order*.

---

[43] *See* 19 CFR 351.225 (k)(1).
[44] *See* Petitioner's Letter, "Non-Malleable Cast Iron Pipe Fittings from The People's Republic Of China/Comments On Draft Results Of Third Redetermination," dated November 15, 2021 (Petitioner Third Remand Redetermination Comments).  Anvil, which reported that it changed its name to ASC Engineered Solutions, LLC on April 5, 2021, submitted comments on the prior draft results of redetermination.  Ward has not filed any submission on the record of the Star Pipe scope inquiry proceeding.  Accordingly, for ease of reference, we refer to Anvil as the petitioner.
[45] *See* Star Pipe's Letter, "Star Pipe Comments on Third Draft Remand Comments in the Scope Inquiry on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated November 15, 2021 (Star Pipe Third Remand Redetermination Comments).
[46] *See Star Pipe III* at 16.
[47] *Id.* at 16-17.

In addition, citing Commerce's statement "should the Court sustain these Final Results of Redetermination, we will issue a revised scope ruling accordingly," the Court ruled that the *Third Final Remand* "is not a decision in a form the court may sustain" because it "is not a scope determination but instead is preliminary to such a decision."[48]  The Court further explained that because the *Third Final Remand* is "not the actual scope determination Commerce plans to issue, it could not be put into effect should it be sustained, and the agency decision that would follow if it were sustained would escape direct judicial review."[49]  Thus, the Court directed Commerce to issue a new determination in a form that would go into effect if sustained upon judicial review and be based on reasoning that does not misconstrue a previous decision of the Court.[50]

As a result of these final results of redetermination, because we have found no further evidence on the record that may support a finding that flanges are within the scope, we have determined, under protest, that Star Pipe's flanges are outside the scope of the *Order*.  We also clarify that these final results of redetermination contain the entirety of Commerce's analysis of whether Star Pipe's flanges are covered by the scope of the *Order* with respect to this remand redetermination.  We do not intend to issue another determination or scope ruling on Star Pipe's flanges subsequent to judicial review of this redetermination.  If the Court sustains this redetermination, a *Federal Register* notice will be published stating that Star Pipe's flanges are outside of the scope of the *Order.*  Furthermore, instructions will be issued to CBP, directing CBP to give effect to this determination as appropriate.

---

[48] *See Star Pipe IV* at 14-15.
[49] *Id*. at 15.
[50] *Id*. at 17.

IV.     **COMMENTS ON THE PRIOR DRAFT RESULTS OF REDETERMINATION**[51]

On November 8, 2021, as a part of the prior remand proceeding subsequent to the Court's

decision in *Star Pipe III*, *i.e.*, the *Third Final Remand* proceeding, Commerce issued its draft

results of redetermination and provided interested parties an opportunity to comment.[52]

Commerce received comments from the petitioner[53] and Star Pipe and addressed them in its

*Third Final Remand*.[54]  As these comments were considered and analyzed as part of the *Third*

*Final Remand*, we have also included the summary and analysis in these final results of

redetermination.  We have not made any changes to our conclusion in these final results of

redetermination.  Instead, we have revised our responses to the comments below regarding *Star*

*Pipe IV*.

**Issue 1:**      **Whether Star Pipe's Flanges Have The Same Physical Characteristics As**
                **Pipe Fittings In The First Paragraph Of The Scope**

*Petitioner's Comments on the Prior Draft Results*

The petitioner argued that Commerce's conclusion in the *Third Draft Results 2021* that

"Star Pipe's flanges are pipe fittings that have the same physical characteristics as those

described in the first paragraph of the scope" is correct.[55]  Moreover, the petitioner contended

that the Star Pipe Scope Ruling, as well as Commerce's conclusions in the first and second

remand redeterminations, "were supported by substantial evidence and in accordance with

---

[51] All issues, comments, position statements and citations in this section were made in reference to, and submitted on the record of, the *Third Final Remand* proceeding.
[52] *See* Draft Results of Redetermination Pursuant to Court Order, *Star Pipe Products v. United States and Anvil International*, Court No. 17-00236, Slip Op. 21-110 (CIT August 26, 2021) (*Third Draft Results 2021*).
[53] *See* Petitioner Third Remand Redetermination Comments.
[54] *See* Star Pipe Third Remand Redetermination Comments.
[55] *See* Petitioner Third Remand Redetermination Comments at 1.

law."[56]  Accordingly, the petitioner maintained that the Court should have affirmed each of those decisions.[57]

*Star Pipe's Comments on the Prior Draft Results*

Star Pipe maintained that a plain reading of the first paragraph of the scope does not support Commerce's finding that its flanges meet the physical characteristic requirements therein, because Commerce has limited its analysis to the outer dimensions and threading characteristics in the scope.[58]  Further, Star Pipe argued that Commerce's finding fails to comply with the Court's opinion that the scope language does not provide a definition of the term "pipe fittings."[59]  Notwithstanding these determinations, Star Pipe agreed with Commerce's conclusion that it should reexamine the sources under 19 CFR 351.225(k)(1), which support a finding that its flanges are outside the scope of the *Order*.[60]

*Commerce's Position On The Prior Draft Results*

As Commerce has previously addressed in the initial scope ruling as well as the first and second final remand redeterminations, Commerce agrees that Star Pipe's ductile iron flanges fall within the first clause of the first sentence of the second paragraph of the scope because they are "{f}ittings that are made out of ductile iron that have the same physical characteristics as the gray or cast iron fittings subject to the scope above."[61]  Additionally, we agree that Star Pipe's flanges meet the description of pipe fittings contained in the first paragraph of the scope because they are a type of ductile iron fitting with an inside diameter between ¼ inch and six inches. Moreover, the first paragraph of the scope states that fittings are covered "regardless of industry

---

[56] *Id.* at 3.
[57] *Id.*
[58] *See* Star Pipe Third Remand Redetermination Comments at 1-2.
[59] *Id.* at 2.
[60] *Id.*
[61] *See* Star Pipe Scope Ruling at 12; *see also* Star Pipe I Final Redetermination at 4-5; and Star Pipe II Final Redetermination at 5.

or proprietary specifications."[62]   Therefore, Commerce considers that there is no need to

determine whether Star Pipe's flanges are produced or threaded to any of the ASME and ASTM

specifications listed in the scope, or are UL certified.

In *Star Pipe III*, the Court explained that Commerce reasonably interpreted the meaning

of the term "pipe fittings" in the Petition and scope language to generally encompass flanges.[63]

Although we have determined, based on the plain language of the scope of the *Order* and

supported by evidence in a source under 19 CFR 351.225(k)(1), that Star Pipe's 11 ductile iron

flanges have the same physical characteristics as pipe fittings described in the first paragraph of

the scope, the Court found Commerce's analysis of Star Pipe's 11 ductile iron flanges to be

unsupported by substantial evidence.   Therefore, for these final results of redetermination, in

light of *Star Pipe II, Star Pipe III,* and *Star IV,* we reconsidered the evidence contained on the

record, including the sources identified in 19 CFR 351.225(k)(1) and are finding, under

respectful protest, that Star Pipe's flanges are outside the scope of the *Order*.

**Issue 2:        Whether Pipe Fittings For Waterworks Are Excluded From The Scope**

*Petitioner's Comments on the Prior Draft Results*

According to the petitioner, any intended end use for Star Pipe's flanges is irrelevant to

Commerce's scope analysis.[64]   Additionally, the petitioner noted that the Petition stated that

subject fittings may be used in applications other than fire protection and steam heat conveyance

systems, and the end use language in the Petition was removed in a subsequent amendment to the

Petition.[65]   Therefore, the petitioner disagreed with Commerce's conclusion in the *Third Draft

Results 2021* that Star Pipe's flanges are outside the scope of the *Order*, and asserts that

---

[62] *See Order.*
[63] *See Star Pipe III* at 17.
[64] *See* Petitioner Third Remand Redetermination Comments at 2.
[65] *Id.* (citing Star Pipe Scope Ruling at Attachment 4, page 3, fn. 5).

Commerce should not find there is an exclusion for pipe fittings used in water supply and waterworks applications.[66]  Alternatively, the petitioner argued that Commerce should continue to make its findings regarding the relevancy of end use to this proceeding under protest, to maintain the government's ability to appeal the Court's rulings to the Court of Appeals for the Federal Circuit.[67]

*Star Pipe's Comments on the Prior Draft Results*

Star Pipe agreed with Commerce's finding that its flanges are not covered by the scope because they are used in waterworks applications, and are not intended for use in the traditional non-malleable pipe fitting applications referenced in the Petition.[68]  Moreover, Star Pipe asserted that substantial evidence in the Petition supports that finding.[69]  Finally, Star Pipe noted that evidence in the ITC Report suggests that "the ITC may have considered ductile iron goods produced to AWWA standards for water supply and waste water applications to be excluded from the domestic like product."[70]

**Commerce's Position on the Prior Draft Results:**

The petitioner is correct that Commerce requested that Anvil and Ward remove end use language from the scope of the Petition,[71] and the resulting scope of the *Order* contains no end use requirement.  This is because Commerce typically does not include end use in scope language, as such requirements could make the scope difficult for CBP to administer at the time of entry.  However, while the scope does not preclude fittings for waterworks applications from

---

[66] *Id.*
[67] *Id.*
[68] *See* Star Pipe Third Remand Redetermination Comments at 2.
[69] *Id.* (citing *Star Pipe III* at 22-23 ("{T}here is no suggestion in the Petition of an intent on the part of the two petitioners, Anvil and Ward, that some ductile iron products made to AWWA standards for the water works industry would be within the proposed scope of the investigation and others would not.")).
[70] *Id.* (citing *Star Pipe III* at 27).
[71] *See* Star Pipe Scope Ruling at Attachment 4, page 3, fn. 5.

also being covered by the scope, the Court identified certain evidence in the Petition and ITC Report indicating that pipe fittings produced for waterworks applications may be excluded.[72] Therefore, because Commerce has reviewed the evidence on the record, in light of *Star Pipe II, Star Pipe III*, and *Star Pipe IV* for these final results of redetermination, we are finding, under respectful protest, that Star Pipe's fittings for waterworks are outside of the scope of the *Order*.

**Issue 3:      Whether An Exclusion For Ductile Iron Flanged Fittings For Waterworks Use Extends To Ductile Iron Flanges For Waterworks Use**

*Star Pipe's Comments on the Prior Draft Results*

Star Pipe agreed with Commerce's finding in the *Third Draft Results 2021* that evidence in the ITC Report indicates that the ITC considered ductile iron flanged fittings used in waterworks applications to be excluded from the scope and, therefore, ductile iron flanges for waterworks are likewise excluded.[73]  Accordingly, Star Pipe argued that this determination is supported by substantial evidence on the record of this proceeding.[74]  However, Star Pipe disputed Commerce's argument that it previously analyzed evidence in the ITC Report regarding the potential exclusion for all ductile iron flanged fittings, as well as the relevancy of this evidence to whether ductile iron flanges are included in the scope, as the ITC Report did not discuss flanges.[75]

The petitioner did not provide any comment.

**Commerce's Position on the Prior Draft Results:**

We disagree with Star Pipe's argument that we failed to analyze evidence in the ITC Report that is relevant to the ITC's understanding of certain ductile iron fittings.  Throughout this

---

[72] *See Star Pipe III* at 22-27.
[73] *See* Star Pipe Third Remand Redetermination Comments at 3.
[74] *Id.* at 4.
[75] *Id.* at 3-4.

proceeding, Commerce has evaluated the evidence in the ITC Report along with the other

sources under 19 CFR 351.225(k)(1), and we have determined that, although flanges share

certain physical characteristics with flanged fittings, they are distinct products and the ITC's

interpretation of whether the scope encompasses any ductile iron *flanged fittings* is not probative

to the question of whether the ITC would have considered ductile iron *flanges* to likewise be

excluded from the scope of the domestic like product.[76]

Because the ITC did not address whether ductile iron flanges or flanges in general were

included in the scope of its material injury investigation, we previously found that evidence in

the ITC Report concerning ductile iron flanged fittings used in waterworks applications is not

dispositive to the question of whether the particular flanges at issue in the instant scope inquiry

are subject to the scope of the *Order*.[77]  Nevertheless, we have reconsidered this record evidence,

in light of the Court's opinions in *Star Pipe II,  Star Pipe III,* and *Star Pipe IV*  and accordingly,

under respectful protest, we continue to find that the evidence suggests that the ITC considered

ductile iron flanged fittings used for waterworks to be generally excluded from the scope of the

*Order* and that the exclusion extends to ductile iron flanges produced for use in waterworks.

**Issue 4:**       **Whether The Exclusion For Ductile Iron Fittings With Certain Ends Made
To AWWA C110 Extends To Ductile Iron Flanges Made To AWWA C115**

*Petitioner's Comments On The Prior Draft Results*

The petitioner contended that the exclusion from the scope for certain ductile iron fittings

made to AWWA C110 does not encompass Star Pipe's flanges that are made to AWWA C115.[78]

Rather, the petitioner maintained that the exclusion in the scope "is specific and must be read

---

[76] *See, e.g.*, Star Pipe II Final Redetermination at 18 and 43; and Star Pipe I Final Redetermination at 12-13 and 30-31.
[77] *Id.*
[78] *See* Petitioner Third Remand Redetermination Comments at 2-3.

narrowly."[79]  The petitioner also noted that, at the time of Commerce's initial investigation, Anvil and Ward were aware of the existence of the AWWA C115 standard and decided to only exclude certain ductile iron fittings made to AWWA C110 and AWWA C153 from the scope of the *Order*.[80]  Finally, the petitioner argued that if Commerce continues to determine that Star Pipe's flanges are excluded from the scope, Commerce should continue to make that finding under protest.[81]

*Star Pipe's Comments on the Prior Draft Results*

Star Pipe argued that substantial record evidence supports Commerce's determination that the exclusion for certain fittings made to AWWA C110 applies to Star Pipe's flanges made to AWWA C115 "because the two standards have the same physical characteristics and reference each other."[82]  However, Star Pipe contended that the Court already addressed Commerce's arguments in the *Third Draft Results 2021* that:  (1) the two standards apply to different types of pipe fittings; and (2) that references to ductile iron fittings with certain ends in the AWWA C110 scope exclusion is not superfluous, which do not detract from the Court's findings regarding the AWWA standards.[83]  Additionally, regarding Commerce's position in the *Third Draft Results 2021* that information on the AWWA standards "does not overcome or supplant Commerce's statutory 'class or kind'" analysis, Star Pipe asserted that Commerce must consider evidence of how the waterworks industry defined and understood flanges and flanged fittings to be probative to the question of whether ductile iron flanges were intended to be covered by the scope of the investigation and resulting *Order*.[84]

---

[79] *Id.* at 3.
[80] *Id.*
[81] *Id.*
[82] *See* Star Pipe Third Remand Redetermination Comments at 4.
[83] *Id.* (citing Star Pipe III at 28-33).
[84] *Id.* at 4-5.

**Commerce's Position on the Prior Draft Results:**

As an initial matter, as stated above, we respectfully disagree that the record supports including Star Pipe's nine flanges that are made to the AWWA C115 standard for flanges in the AWWA C110 exclusion for pipe fittings with certain ends.  Particularly, we believe that the record does not support extending an exclusion for ductile iron flanged fittings with certain endings and made to AWWA C110 specifications to ductile iron flanges made to AWWA C115 specifications because, although the fittings may have the same or overlapping physical and chemical properties, the AWWA C110 exclusion explicitly covers separate pipe fittings from the AWWA C115 exclusion.  However, after considering all the evidence on the record in light of *Star Pipe II*, *Star Pipe III*, and *Star Pipe IV*, under respectful protest, we find that because the specifications are similar, Star Pipe's flanges are excluded from the scope of the order.  Furthermore, while we respectfully disagree that the exclusion language for pipe fitting endings is superfluous, under respectful protest, are no longer relying on arguments made in the Star Pipe II Final Redetermination on this issue to support our determination as to Star Pipe's flanges.

With respect to Star Pipe's argument that Commerce must consider in its scope analysis how the waterworks industry understands flanges and flanged fittings, we disagree.  There is no evidence on the record that interested parties, including the industries that produce and use pipe fittings, presented information to Commerce that would identify flanges as a separate class or kind of product from the pipe fittings subject to the scope of the investigation.  Moreover, 19 CFR 351.225(k)(1) instructs Commerce to take into account the following factors when conducting a scope ruling under this provision:  "{t}he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary {of Commerce} (including prior scope determinations) and the {U.S. International Trade}

20

Commission."  Therefore, we continue to find that the issuance of separate standards for distinct types of pipe fittings by the AWWA does not overcome or supplant Commerce's statutory "class or kind" finding from the investigation and this evidence is not probative to the question in this scope inquiry.  Nonetheless, after reviewing the evidence on the record, and in light of *Star Pipe II*, *Star Pipe III*, and *Star Pipe IV*, under respectful protest, we find that the AWWA C110 exclusion for certain pipe fittings in the scope extends to Star Pipe's nine flanges made to AWWA C115.

**Issue 5:**     **Whether Star Pipe's Flanges With Diameters Smaller Than Three Inches Are Outside The Scope**

*Star Pipe's Comments on the Prior Draft Results*

Star Pipe agreed with Commerce's finding in the *Third Draft Results 2021* that, based on substantial record evidence, each of Star Pipe's 11 ductile iron flanges, regardless of diameter, are outside the scope of the *Order*.[85]  Further, Star Pipe argued that if Commerce determined that its flanges are covered by the scope, Commerce should then conduct an inquiry under 19 CFR 351.225(k)(2) and examine the evidence contained within Star Pipe's scope request.[86]

The petitioner did not provide any comment.

**Commerce's Position on the Prior Draft Results:**

As discussed above, under respectful protest, we find that each of Star Pipe's 11 ductile iron flanges are excluded from the scope of the *Order*.  Accordingly, we find it unnecessary to conduct an analysis under 19 CFR 351.225(k)(2).

---

[85] *See* Star Pipe Third Remand Redetermination Comments at 5.
[86] *Id.*

## V.      COMMENTS ON DRAFT RESULTS OF REDETERMINATION

On December 7, 2022, Commerce issued its draft results of redetermination and provided interested parties an opportunity to comment.[87]  Commerce received comments from the petitioner[88] and Star Pipe.[89]  These comments are addressed below.  After considering the petitioner's and Star Pipe's comments, we have not made any changes to our conclusion in the Fourth Draft Remand Redetermination in these final results of redetermination.

**Issue:**          **Commerce's Decision in the Fourth Draft Remand Redetermination**

*Star Pipe's Comments*

Star Pipe agrees with Commerce's conclusion that its ductile iron flanges are outside of the scope of the *Order*.[90]  Star Pipe also finds that Commerce's Fourth Draft Remand Redetermination is in a form that can be sustained upon judicial review.[91]  However, Star Pipe continues to disagree that Commerce should make its out-of-scope determination under protest in light of providing no new analysis and considering the substantial record evidence that Star Pipe's ductile iron flanges are outside of the scope of the *Order*.[92]  Star Pipe believes that by continuing to make its finding "under respectful protest," Commerce has failed to follow the Court's instruction that it reach its conclusion on a "more comprehensive review of the relevant record evidence."[93]

---

[87] *See* Draft Results of Redetermination Pursuant to Court Remand, *Star Pipe Products v. United States and Anvil International*, Court No. 17-00236, Slip Op. 22-127 (CIT November 18, 2022), dated December 7, 2022 (Fourth Draft Remand Redetermination).
[88] *See* Petitioner's Letter, "Non-Malleable Cast Iron Pipe Fittings from The People's Republic Of China/Comments On Draft Results Of Fourth Redetermination," dated December 12, 2022 (Petitioner Comments on Fourth Draft Remand Redetermination).  Anvil, which reported that it changed its name to ASC Engineered Solutions, LLC on April 5, 2021, submitted comments.  Ward has not filed any submission on the record of the Star Pipe scope inquiry proceeding.  Accordingly, for ease of reference, we refer to Anvil as the petitioner.
[89] *See* Star Pipe's Letter, "Star Pipe Comments on Fourth Draft Remand in the Scope Inquiry on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China," dated December 12, 2022.
[90] *Id*.
[91] *Id*.
[92] *Id*.
[93] *Id.*

*Petitioner's Comments*

The petitioner reiterates its belief Commerce should find that Star Pipe's ductile iron flanges are within the scope of the *Order*.[94]  Barring that conclusion, the petitioner states that if Commerce finds that Star Pipe's ductile iron flanges are outside of the scope of the *Order*, it should continue to make this finding under respectful protest.[95]

**Commerce's Position:**

Commerce's right to file a remand "under protest" is well settled.[96]  We disagree with Star Pipe's argument that we have not followed the Court's instructions by doing so.  In addition, given that Star Pipe agrees with Commerce's findings in these final results of redetermination, we have made no changes to our Fourth Draft Remand Redetermination that Star Pipe's ductile iron flanges are outside the scope of the *Order*.  As our above analysis in these final results of redetermination demonstrates, Commerce has followed the Court's instructions by conducting a "more comprehensive review of the relevant record evidence" in view of *Star Pipe I*, *Star Pipe II*, *Star Pipe II*, and *Star Pipe IV*.[97]  As detailed above, based "upon review of all evidence contained on the record and the Court's statements in *Star Pipe I*, *Star Pipe II*, *Star Pipe III*, and *Star Pipe IV*, we find, under respectful protest, based on the above analysis of the scope language, Petition, and ITC report, that Star Pipe's flanges are not within the scope of the *Order*."

---

[94] *See* Petitioner Comments on Fourth Draft Remand Redetermination.
[95] *Id*.
[96] *See Meridian Prods., LLC v. United States*, 890 F.3d 1272, 1276-77 (Fed. Cir. 2018) (citing *Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003)).
[97] *See Star Pipe IV* at 16-17.

23

## VI.    FINAL RESULTS OF REDETERMINATION

Based on the above analysis, Commerce continues to find Star Pipe's ductile iron flanges to be outside the scope of the *Order*.  As stated above, should the Court affirm these final results of redetermination, a *Federal Register* notice will be published stating that, consistent with the Court's holdings, Star Pipe's ductile iron flanges are outside the scope of the *Order*.  Further, relevant instructions to CBP giving effect to the determination, as sustained by the Court, will also be issued at that time as appropriate.

12/16/2022

X 

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance