**Slip Op. No. 24-28**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **STAR PIPE PRODUCTS,** | |
| Plaintiff, | |
| v. | |
| **UNITED STATES,** | **Before: Timothy C. Stanceu, Judge** |
| Defendant, | **Court No. 17-00236** |
| and | |
| **ASC ENGINEERED SOLUTIONS, LLC,** | |
| Defendant-Intervenor. | |

**OPINION**

[Sustaining a decision that certain ductile iron flanges are not within the scope of an antidumping duty order on certain cast iron pipe fittings]

Dated:   March 6, 2024

*Francis J. Sailer*, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, Washington, D.C., for plaintiff.  With him on the brief were *Ned H. Marshak*, New York, N.Y., and *Kavita Mohan*, Washington, D.C.

*Joshua E. Kurland*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant.  With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *L. Misha Preheim*, Assistant Director.  Of counsel was *David W. Richardson*, Senior Counsel, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

*Daniel L. Schneiderman*, King & Spalding LLP, of Washington, D.C., for defendant-intervenor.  With him on the brief was *J. Michael Taylor*.

Stanceu, Judge:  Plaintiff Star Pipe Products ("Star Pipe") commenced this action in 2017 to contest a decision of the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") that a group of imported products, certain "flanges" made of ductile cast iron, are within the scope of an antidumping duty order.

Before the court is the Department's fourth decision issued in response to court orders (the "Fourth Remand Redetermination"), which Commerce submitted to the court in response to the opinion and order in *Star Pipe Prods. v. United States*, 46 CIT __, 607 F. Supp. 3d 1192 (2022) ("*Star Pipe IV*").  The court sustains the Department's decision in the Fourth Remand Redetermination that Star Pipe's flanges are outside the scope of the Order.

## I. BACKGROUND

Background, set forth in the court's prior opinions, is summarized and supplemented briefly herein.  *Id*., 46 CIT at __, 607 F. Supp. 3d at 1194; *Star Pipe Prods. v. United States*, 45 CIT __, __, 537 F. Supp. 3d 1362, 1365—67 (2021) ("*Star Pipe III*"); *Star Pipe Prods. v. United States*, 44 CIT __, __, 463 F. Supp. 3d 1366, 1368—70 (2020) ("*Star Pipe II*"); *Star Pipe Prods. v. United States*, 43 CIT __, __, 365 F. Supp. 3d 1277, 1278—79 (2019) ("*Star Pipe I*").

The contested administrative decision, the "Final Scope Ruling," is entitled *Final Scope Ruling on the Antidumping Duty Order on Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China: Request by Star Pipe Products* (Aug. 17, 2017) (P.R. Doc. 13) ("*Final Scope Ruling*")[1].  *See Notice of Scope Rulings*, 84 Fed. Reg. 9,295, 9,296 (Int'l Trade Admin. Mar. 14, 2019).  The Final Scope Ruling concluded that Star Pipe's ductile iron flanges are within the scope of an antidumping duty order issued in 2003 (the "Order"). *See Notice of Antidumping Duty Order: Non-Malleable Cast Iron Pipe [Fittings] From the People's Republic of China*, 68 Fed. Reg. 16,765 (Int'l Trade Admin. Apr. 7, 2003) ("*Order*"). The Order resulted from an antidumping duty petition (the "Petition") filed in 2002. *See Petition for Imposition of Antidumping Duties: Non-Malleable Cast Iron Pipe Fittings from the People's Republic of China* (Feb. 21, 2002) (P.R. Docs. 30–32, Ex. 1) ("*Petition*").

In the first and second remand decisions in response to the court's decisions in *Star Pipe I* and *Star Pipe II*, respectively, Commerce placed Star Pipe's flanges within the scope of the Order.  As it did in the decision now before the court, Commerce determined under protest in the third remand redetermination (in response to *Star Pipe III*) that the Order does not apply to Star Pipe's flanges.  Commerce submitted the Fourth Remand Redetermination to the court on December 19, 2022.  Final Results of

---

[1] Citations to documents from the Remand Joint Appendix (October 22, 2019), ECF No. 68 are referenced herein as "P.R. Doc. __".  All information disclosed in this Opinion and Order is public information.

Redetermination Pursuant to Court Remand (Dec. 19, 2022), ECF No. 102 ("*Fourth Remand Redetermination*").

While agreeing with the Department's determination that its flanges are not within the scope of the Order, Star Pipe objects to aspects of the Fourth Remand Redetermination, including the Department's issuing its redetermination "under protest." Star Pipe Products's Comments on the Fourth Final Remand Redetermination (Jan. 12, 2023), ECF No. 107 ("Star Pipe's Comments").

Defendant-intervenor ASC Engineered Solutions, LLC ("ASC," formerly "Anvil International" or "Anvil") opposes the Fourth Remand Redetermination, arguing that it is "unsupported by substantial record evidence and is otherwise not in accordance with law." Def.-Intervenor's Comments on the Final Results of Remand Redetermination 1 (Jan. 10, 2023), ECF No. 106 ("ASC's 2023 Comments").

Responding to the comment submissions, defendant United States takes the position that "the Court should sustain the Fourth Remand Results and enter final judgment for the Government because . . . the Fourth Remand Results are supported by substantial evidence and otherwise lawful." Def.'s Resp. to Comments on the Fourth Remand Results 1 (Jan. 23, 2023), ECF No. 108 (Def.'s Resp.).

## II. Discussion

### A. Jurisdiction and Standard of Review

The court exercises subject matter jurisdiction according to 28 U.S.C. § 1581(c), which vests in the Court of International Trade exclusive jurisdiction of a civil action commenced under section 516A of the Tariff Act of 1930, *as amended*, 19 U.S.C. § 1516a.[2] Decisions reviewable under section 516A include "a determination by the administering authority [Commerce] as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing . . . antidumping . . . duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). Upon judicial review, the determinations, findings, and conclusions in the Fourth Remand Redetermination will be upheld unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

### B. Description of Star Pipe's Flanges

Star Pipe stated in its request to Commerce for a scope ruling (the "Scope Ruling Request") that "[a] flange is an iron casting used to modify a straight end pipe to enable its connection either to a flanged pipe, a flanged pipe fitting or another flange attached to the otherwise straight end of another pipe, in order to connect pipes, valves, pumps and other equipment to form a piping system." *Star Pipe Products Scope Ruling Request:*

---

[2] Statutory citations are to the 2012 edition of the United States Code, and regulatory citations are to the 2017 edition of the Code of Federal Regulations.

*Ductile Iron Flanges* at 3 (June 21, 2017) (P.R. Docs. 1—3) ("*Scope Ruling Request*").  Star

Pipe stated, further, that its flanges "are made from ductile iron, and meet the American

Water Works Association ('AWWA') Standard C115."  *Id.*  The Scope Ruling Request

added that the flanges "are for the water and wastewater industries."  *Id.* at 10; *see also*

*id.* at 18 ("Star Pipe's ductile iron flanges are sold for use in water or waste waterworks

projects.  The majority of sales . . . are sold to fabricators to fabricate the products into

flanged pipes.").

Each Star Pipe flange, which is disc-shaped, has in the thicker center portion (the

"hub") a large hole with tapered thread allowing threading of the flange onto the end of

a threaded pipe.  *See id.* at Ex. 1.  The outer, thinner portion of each flange is drilled with

holes, either tapped or untapped, arranged in a circle for the insertion of fasteners.  *Id.*

Photographs in the Scope Ruling Request illustrate how two pipes to which flanges

have been assembled can be joined using bolts and nuts through the eight holes, with a

gasket fitted between the two flanges to seal the joint.  *Id.* at Ex. 8.

### C.  The Scope Language of the Order

The Order addresses non-malleable cast iron pipe fittings in the first paragraph

of the scope language, as follows:

> The products covered by this order are finished and unfinished
> non-malleable cast iron pipe fittings with an inside diameter ranging from
> 1/4 inch to 6 inches, whether threaded or unthreaded, regardless of
> industry or proprietary specifications.  The subject fittings include elbows,
> ells, tees, crosses, and reducers as well as flanged fittings.  These pipe
> fittings are also known as "cast iron pipe fittings" or "gray iron pipe

fittings." These cast iron pipe fittings are normally produced to ASTM
A-126 and ASME B.16.4 specifications and are threaded to ASME B1.20.1
specifications. Most building codes require that these products are
Underwriters Laboratories (UL) certified. The scope does not include cast
iron soil pipe fittings or grooved fittings or grooved couplings.

*Order*, 68 Fed. Reg. at 16,765. Star Pipe's flanges, which are made from ductile cast iron,

and not from non-malleable cast iron ("gray iron"), are not described by this paragraph.

*See Star Pipe I*, 43 CIT at__, 365 F. Supp. 3d at 1281. The second paragraph addresses

ductile iron fittings, as follows:

> Fittings that are made out of ductile iron that have the same
> physical characteristics as the gray or cast iron fittings subject to the scope
> above or which have the same physical characteristics and are produced
> to ASME B.16.3, ASME B.16.4, or ASTM A-395 specifications, threaded to
> ASME B1.20.1 specifications and UL certified, regardless of metallurgical
> differences between gray and ductile iron, are also included in the scope
> of this petition.[3] These ductile fittings do not include grooved fittings or
> grooved couplings. Ductile cast iron fittings with mechanical joint ends
> (MJ), or push on ends (PO), or flanged ends and produced to the
> American Water Works Association (AWWA) specifications AWWA C110
> or AWWA C153 are not included.

*Order*, 68 Fed. Reg. at 16,765.

### D. Positions of the Parties on the Fourth Remand Redetermination

ASC argues that the Fourth Remand Redetermination is "unsupported by

substantial record evidence and is otherwise not in accordance with law." ASC's 2023

Comments 1. ASC urges the court to "remand once again for Commerce to reconsider

---

[3] "The reference to 'this petition' is incorrect and probably should read 'this
order.'" *Star Pipe Prods. v. United States*, 43 CIT __, __, 365 F. Supp. 3d 1277, 1281 n.4
(2019).

its decision." *Id*. at 2.  ASC incorporated by reference the comments it submitted to the

court in response to the preceding (third) redetermination upon remand.  *Id*.

(incorporating Def.-Intervenor's Comments on the Final Results of Remand

Redetermination (Jan. 21, 2022), ECF No. 97 ("ASC's 2022 Comments")).

 ASC opposes the Fourth Remand Redetermination on four grounds.  It argues

that "Star Pipe's flanges clearly fall within the plain language of the scope" and,

therefore, that "[t]here being no ambiguity, that should have been the end of the matter;

there was no justification to consider the '(k)(1)' [19 C.F.R. § 351.225(k)(1)] materials."

ASC's 2022 Comments 2—3 (citing *OMG, Inc. v. United States*, 972 F.3d 1358, 1363 (Fed.

Cir. 2020)).  ASC also argues that, the court not having directed Commerce to exclude

Star Pipe's flanges from the Order, Commerce failed to comply with the court's

directive in *Star Pipe III* to conduct a comprehensive reevaluation of the record

evidence.  *Id*. at 2.  According to ASC, the record evidence does not support a

determination that Star Pipe's flanges are outside the scope of the Order.  *Id*.  Third,

ASC asserts that the scope language of the Order, contrary to the Department's analysis,

does not contain an "end use" limitation.  ASC's 2023 Comments 2; ASC's 2022

Comments 3.  Fourth, ASC maintains that fittings made to AWWA C115 specifications

are not excluded from the scope.  ASC's 2023 Comments 2; *see also* ASC's 2022

Comments 4.

Star Pipe comments that it agrees with the Department's conclusion that its

products are outside the scope of the antidumping duty order but objects to the Fourth

Remand Redetermination on the ground that "the Department should not issue its

decision 'under protest' as substantial record evidence and the Court's decisions in *Star*

*Pipe I*, *Star Pipe II*, *Star Pipe III*, and *Star Pipe IV* support such a determination."  Star

Pipe's Comments 2—3.  Star Pipe states, further, that it "disagrees with assertions made

by the Department that the record could support an alternate conclusion" and "[t]hus,

the Department has failed to follow the Court's instruction that it reach its conclusion

based on '*a more comprehensive review* of the relevant record evidence.'"  *Id*. at 2

(quoting *Star Pipe IV*, 46 CIT at __, 607 F. Supp. 3d at 1199).  According to Star Pipe,

"[t]he Department has simply re-asserted its prior arguments and issued its decision

under protest, without providing any new analysis considering, or according weight to,

the substantial record evidence that Star Pipe's ductile iron flanges are not within the

scope of the Order."  *Id*.

Defendant disagrees with the positions of ASC and Star Pipe.  Taking issue with

ASC's position, defendant argues that "the Court should sustain the Fourth Remand

Results and enter final judgment for the Government because Commerce has complied

with the Court's remand order and because the Fourth Remand Results are supported

by substantial evidence and otherwise lawful."  Def.'s Resp. 1.  Defendant explains that

"Commerce reviewed the evidence on the record, in conjunction with the Court's

decisions, and found that the record lacks the necessary evidentiary support in the

scope language, the petition, the [International Trade Commission's] determination in

its investigation, and prior scope determinations to support a finding that [Star Pipe's]

flanges are within the scope of the order."[4]  *Id*. at 6—7 (citations omitted).

Responding to Star Pipe's objection that Commerce should not have designated

the Fourth Remand Redetermination as a decision reached "under protest," defendant

argues that it is a "well-settled legal principle . . . that Commerce is entitled to issue a

remand 'under protest.'"  *Id*. at 8 (citing *Meridian Prods., Ltd. v. United States*, 890 F.3d

1272, 1276—77 (Fed. Cir. 2018); *Viraj Grp. Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed.

Cir. 2003)).  Nevertheless, defendant maintains that the Fourth Remand

Redetermination is supported by substantial evidence, is otherwise lawful, and should

be sustained by the entry of judgment in favor of the United States.  Def.'s Resp. 1.

Responding to Star Pipe's objection that Commerce failed to comply with the court's

directive, defendant argues that "Commerce explained that it has followed the Court's

instructions by conducting a 'more comprehensive review of the relevant record

evidence' in view of *Star Pipe I*, *Star Pipe II*, *Star Pipe III*, and *Star Pipe IV*, as

---

[4] The quoted sentence from the comment submission erroneously referred to "Crane's flanges" instead of "Star Pipe's flanges."  *See* Def.'s Resp. to Comments on the Fourth Remand Results 7 (Jan. 23, 2023), ECF No. 108.  "Crane's flanges" are the subject of a different judicial review proceeding.  *MCC Holdings dba Crane Resistoflex v. United States*, 46 CIT __, 607 F. Supp. 3d 1201 (2022).

demonstrated by the final results of Commerce's fourth redetermination." *Id*. at 8

(citations omitted).

### E. Commerce Was Required to Consider the Factors in 19 C.F.R. § 351.225(k)(1)

ASC is incorrect in arguing that the scope language unambiguously includes Star

Pipe's flanges.  Although the scope language of the Order mentions "flanged fittings," it

does not mention flanges, nor does it define the term "fitting" (or "pipe fitting") so as to

resolve the issue of whether flanges generally fall within the meaning of that term as

used therein.  Nor does it resolve the specific issue of whether ductile iron flanges such

as Star Pipe's were intended to be within the scope.

At the time the Scope Ruling was issued, the Department's regulations required

Commerce to consider: "the descriptions of the merchandise contained in the petition,

the initial investigation, and the determinations of the Secretary (including prior scope

determinations) and the [U.S. International Trade] Commission."  19 C.F.R.

§ 351.225(k)(1).[5]  As the court previously held in *Star Pipe I*, the Scope Ruling erred in

---

[5] An amendment to 19 C.F.R. § 351.225(k), effective as to scope applications filed on or after November 4, 2021, does not apply to this proceeding.  *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws; Final Rule*, 86 Fed. Reg. 52,300, 52,327 (Sept. 20, 2021).

The regulatory provision applicable here does not identify the *only* considerations, as the Department's inquiry must interpret the scope language of the antidumping or countervailing duty order.  *See Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1095 (Fed. Cir. 2002) ("Commerce cannot interpret an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner (continued . . .)

failing to consider the merchandise descriptions in the Petition and in disregarding

certain evidence contained in the "ITC Report," which was the report of the affirmative

determination of threat to the domestic industry issued by the U.S. International Trade

Commission ("ITC" or the "Commission") during the antidumping duty investigation.

*See Non-Malleable Pipe Fittings from China*, Inv. No. 731-TA-990 (Final), USITC Pub. No.

3586 (Mar. 2003).

### F. Substantial Record Evidence Supports the Conclusion in the Fourth Remand Redetermination that Star Pipe's Flanges Are Not Subject to the Order

The court next considers ASC's position, opposed by defendant, that the Fourth

Remand Redetermination is unsupported by substantial record evidence.  The court

rejects ASC's position in light of the substantial record evidence that supports a

determination that Star Pipe's flanges are outside the scope of the Order.  The record

evidence is discussed in the court's previous opinions, but in this Opinion it will suffice

to highlight certain evidence that is highly probative on, and sufficient to support, the

Department's conclusion to exclude Star Pipe's products.

---

(. . . continued)

contrary to its terms." (Internal quotation marks and citation omitted)).  Commerce
considers additional factors if the (k)(1) factors do not allow it to reach a decision.
19 C.F.R. § 351.225(k)(2).  Moreover, to be sustained upon judicial review, the
determination must be supported by the record evidence considered on the whole.  As
a practical matter, this must include consideration of the record information contained
in the scope ruling request, which ordinarily will include, *inter alia*, "[a] detailed
description of the product, including its technical characteristics and uses."  19 C.F.R.
§ 351.225(c)(1)(i).

One of the sources of information identified in § 351.225(k)(1), "determinations of the Commission," consisted of the affirmative determination of threat to the domestic industry as published in the ITC Report. The court concluded earlier in this litigation that "[r]ead in the entirety, the ITC Report contains evidence lending weight to a conclusion that Star Pipe's flanges are not subject merchandise." *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1286. That evidence included language in the ITC Report indicating that the ITC considered all flanged fittings made of ductile cast iron to be excluded from the scope of the ITC's investigation. As the court reasoned, "[b]ecause ductile flanged fittings are excluded from the scope of the domestic like product (which the ITC defined as identical to the scope of the investigation), it cannot be concluded that the ITC reached an affirmative injury or threat determination as to them." *Id.*, 43 CIT at __, 365 F. Supp. 3d at 1285. The court reasoned, further, that "[t]his aspect of the ITC's investigation strongly cautions against an interpretation of the scope language to include ductile flanged fittings, of any specification." *Id.* (citing *Atkore Steel Components, Inc. v. United States*, 42 CIT __, __, 313 F. Supp. 3d 1374, 1381—82 (2018)). As the court also stated previously, "[t]his evidence strongly supports the view that the ITC excluded ductile flanged fittings from the unfairly traded imports that it found to threaten to injure the domestic industry." *Star Pipe III*, 45 CIT at __, 537 F. Supp. 3d at 1375 (footnote omitted).

Throughout this litigation, Commerce has taken the position that Star Pipe's products are "flanges" and also are "fittings" within the meaning of that term as used in the scope language of the Order yet are not "flanged fittings." A conclusion that flanges and flanged fittings are different classes of goods is supported by certain record evidence, including evidence in the ITC Report, *see Star Pipe II*, 44 CIT at __, 463 F. Supp. 3d at 1376, and, as discussed later in this Opinion and Order, evidence pertaining to established standards for the water works industry, under which ductile iron flanges are not considered to be "fittings" or "pipe fittings." As the court pointed out previously, "[t]he absence of any mention of ductile iron flanges, as opposed to ductile flanged fittings, in the ITC Report . . . casts doubt on the premise that ductile iron flanges were contemplated as part of either the scope of the investigation or the scope of the domestic like product." *Star Pipe I*, 43 CIT at __, 365 F. Supp. 3d at 1286.

The court previously addressed certain evidence in the Petition relevant to the issue of whether flanges were intended to be included in the scope of the requested investigation. The court noted that certain brochures attached to the Petition supported a finding that petitioners considered flanges to be a type of "pipe fitting," *Star Pipe II*, 44 CIT at __, 463 F. Supp. 3d at 1372—73, but the court further noted that "the absence of any mention of flanges in the body of the Petition detracts from an inference that petitioners intended for flanges to be subject to the investigation." *Id.*, 44 CIT at __, 463 F. Supp. 3d at 1373.

Additionally, the Petition identified the industries for which "virtually all" of the "subject fittings" were used, as discussed below.  That the Petition specifically identified two industries other than the water works industry is an indication, among other evidence, that ductile iron flanges manufactured for use in the water works industry were not intended to be within the scope of the investigation.

## G.  Commerce Did Not Base the Fourth Remand Redetermination on an "End Use" Limitation

The Scope Ruling Request stated that Star Pipe's flanges "are for the water and wastewater industries."  *Scope Ruling Request* at 10.  In contrast, the Petition stated that "[v]irtually all subject fittings are used in fire protection systems and in the steam heat conveyance systems used in older cities."  *Petition* 4 (placed on the record as "new factual information" ("NFI"), Ex. 1, by Star Pipe Products; *see Star Pipe II*, 44 CIT at __, 463 F. Supp. 3d at 1370).

ASC argues that Commerce erroneously imposed an "end use" limitation not found in the scope language.  ASC's 2023 Comments 2; ASC's 2022 Comments 3.  This argument misreads the Fourth Remand Redetermination, which Commerce did not base on a general conclusion that *all* products produced for water works are excluded from the scope of the Order.  *See Fourth Remand Redetermination* 6.  Instead, this case presented the narrower issue of whether a *specific* class or kind of merchandise, as shown by evidence in the sources described in 19 C.F.R. § 351.225(k)(1), was intended to be within the scope of the investigation conducted by Commerce and the ITC.  That

merchandise consisted of threaded flanges that were made of ductile iron, that shared a

physical characteristic with ductile iron flanged fittings (which the ITC considered

outside the scope of its investigation), that were produced for use in the water works

industry and, as discussed below, that are not considered to be "pipe fittings" according

to standards for that industry.

### H. Record Evidence that Threaded Ductile Iron Flanges Meeting American Water Works Association Standard C115 Are Not Subject to the Order

ASC commented that "Commerce, acting under protest, erred by . . . finding that

fittings made to AWWA C115 specifications are excluded from the scope."  ASC's 2023

Comments 1—2.  This comment is not an accurate paraphrase of the Department's

finding, and it is misguided in its use of the word "fittings": according to

uncontradicted record evidence, there *are* no "fittings" made to AWWA C115

specifications.  The record evidence on the AWWA standards, placed on the record by

Star Pipe, supported Star Pipe's position that AWWA C115 does not apply to "fittings"

and instead applies to "flanges" and combinations of flanges and pipes.  *See Star

Pipe III*, 45 CIT at __, 537 F. Supp. 3d at 1376—79.

The scope language in the Order contains an exclusion for ductile cast iron

fittings with flanged ends that are produced to AWWA specification C110 or C153.

*Order*, 68 Fed. Reg. at 16,765.  The Scope Ruling Request stated that Star Pipe's flanges

"meet the American Water Works Association ("AWWA") Standard C115."  *Scope

Ruling Request* at 3.  Star Pipe placed evidence on the record supporting a finding that

AWWA C110/AWWA C153 and AWWA C115 are complementary standards. As discussed in detail in *Star Pipe III*, 45 CIT at __, 537 F. Supp. 3d at 1376—79, there is "uncontradicted record evidence," including evidence on the history of the development of AWWA C115, that flanges produced to AWWA C115 must conform to the chemical and physical properties required by AWWA C110. The court also identified record evidence that, for purposes of the AWWA standards applying to the water works industry, flanges are not considered to be pipe fittings as well as record evidence supporting Star Pipe's contention that ". . . AWWA C115 is a complementary standard to AWWA C110 and C153; the only difference is that C115 covers flanges while C110 and C153 are for flanged fittings." *Id.*, 45 CIT at __, 537 F. Supp. 3d at 1378.

As the court previously ruled, Commerce was required to consider "evidence that the type of flange at issue in this case, which is a threaded flange produced for attachment to a threaded pipe produced for the water works industry, is *not* considered to be a pipe fitting by the AWWA standards that apply to products produced for that industry." *Star Pipe III*, 45 CIT at __, 537 F. Supp. 3d at 1372. In the second redetermination that it submitted in response to *Star Pipe II*, Commerce decided that Star Pipe's flanges are not excluded by the AWWA specification because, although they are "flanges" and, in the view of Commerce, "fittings," they are not "flanged fittings." *See id.*, 45 CIT at __, 537 F. Supp. 3d at 1378. The court considered this analysis illogical:

This reasoning overlooks the plain fact that Commerce itself drafted the
exclusion in terms of AWWA standards.  Having done so, Commerce
must be presumed to have been familiar with those standards, including,
in particular, the distinction the AWWA standards draw between
threaded "flanges" used to manufacture flanged pipe, addressed by
AWWA C115, and the "fittings" addressed by AWWA C110.  As a result,
Commerce did not address or explain the contradiction underlying its
conclusion: Commerce placed Star Pipe's flanges under the Order because
it considered these goods to be pipe fittings (but not flanged pipe fittings)
and because, according to Commerce, Star Pipe's products are not
produced to AWWA specifications C110 or C153—specifications
according to which Star Pipe's flanges are *not* pipe fittings.

*Id*.  The court concluded, further, that Commerce failed to address the uncontradicted

record evidence that flanges produced to AWWA C115 must conform to the chemical

and physical properties required by AWWA C110.  *Id*., 45 CIT at __, 537 F. Supp. 3d at

1378—79.  In the second remand redetermination, Commerce overlooked the

uncontradicted record evidence demonstrating that Star Pipe's threaded ductile iron

flanges could not conform to AWWA C110 because, in the view of the AWWA, they are

not pipe fittings.

In the Fourth Remand Redetermination, Commerce found, under protest, that

"Star Pipe's AWWA C115 flanges are covered by the AWWA C110 exclusion language

contained in the scope of the *Order*."  *Fourth Remand Redetermination* 9—10.  This finding

is technically imprecise, as the C110 specification does not apply to flanges.  The court

previously rejected the Department's conclusion that *Star Pipe III* expanded the AWWA

C110 standard, *Star Pipe IV*, 46 CIT at __, 607 F. Supp. 3d at 1200, and the court does not

interpret this imprecisely-stated finding as such an expansion.  Instead, the court views

the finding as supported by the substantial record evidence that AWWA C110 and

AWWA C115 are closely interrelated, including the evidence on the history of the

development of AWWA C115. *See Star Pipe III*, 45 CIT at __, 537 F. Supp. 3d at 1376-79.

A finding that a flange conforms to AWWA C115 cannot also constitute a finding that

the flange conforms to C110 (because no flange can do so) but instead is a finding,

among others, supporting a determination that such a product is outside the intended

scope of the Order.

    The court previously noted that AWWA C115, "which the evidence shows is

closely interrelated with AWWA C110, parallels the 3-inch nominal minimum size

specification for fittings by applying only to threaded pipes that are 3 inches or larger in

nominal pipe size." *Star Pipe III*, 45 CIT at __, 537 F. Supp. 3d at 1379 (citation omitted).

Nine of the eleven flanges identified in the Scope Ruling Request are produced for

threaded pipes larger than 3 inches in nominal diameter; two are for smaller pipes (2.5

inches in outer diameter). The court noted that, as a result, the two Star Pipe flanges for

smaller pipes are not within the defined scope of the AWWA C115 standard. *Id*. In the

Fourth Remand Redetermination, Commerce nevertheless ruled that these two flanges,

like the other nine, are outside the scope of the Order, based on other record evidence

present in the Petition and the ITC Report. *Fourth Remand Redetermination* 10.

    In summary, Commerce considered evidence in the Petition and the ITC Report

that supported a conclusion that ductile iron flanges in general were not within the

scope of the antidumping duty investigations.  The record evidence as a whole was sufficient to allow Commerce to conclude that threaded ductile iron flanges in particular, produced for the water works industry and conforming to AWWA specification C115 pertaining to that industry, are not subject to the Order.

## I. Star Pipe's Objection that Commerce Issued the Fourth Remand Redetermination Under Protest

Star Pipe "agrees with the Department's conclusion that all of the ductile iron flanges subject to Star Pipe's scope request are outside the scope of the Order on non-malleable cast iron pipe fittings from the People's Republic of China."  Star Pipe's Comments 1.  Star Pipe objects that Commerce issued the Fourth Remand Redetermination under protest, but it does not go so far as to advocate that the court issue another order of remand to the agency.  Instead, Star Pipe urges the court to "affirm Commerce's conclusion in its Fourth Remand Results, though not Commerce's reasoning to issue this decision under protest."  Star Pipe's Comments 3.

The court rejects Star Pipe's argument that the court should disallow the Department's submitting the Fourth Remand Redetermination under protest.  The qualification that the decision is "under protest" may maintain defendant's right to appeal a judgment the court enters to sustain the agency's decision that Star Pipe's flanges are outside the scope of the Order, should defendant choose to do so despite its acknowledgments that the Fourth Remand Redetermination is supported by substantial evidence on the record.  Commerce reasonably concluded that the record evidence,

interpreted in conjunction with the court's prior opinions (which disallowed certain findings as unsupported by the record evidence), does not contain sufficient evidence for the opposite conclusion.  At the same time, the court need not, and does not, hold that *every* statement Commerce made in the Fourth Remand Redetermination to explain its ultimate conclusion is necessarily correct, so long as that conclusion is adequately explained, as it is in this instance.

*Star Pipe IV* held that the Department's previous remand redetermination incorrectly stated that the court reached factual findings and was not in a form that could go into effect through the entry of a judgment.  *See Star Pipe IV*, 46 CIT at __, 607 F. Supp. 3d at 1200.  The court ruled, specifically, that the third remand redetermination impermissibly concluded "that the court reached certain 'findings,' expanded the AWWA C110 standard, and ordered Commerce to exclude Star Pipe's flanges from the Order."  *Id*.  The Fourth Remand Redetermination addressed the shortcomings the court identified.

Applying the standard of review, the court rules that the decision reached by the Fourth Remand Redetermination—i.e., that Star Pipe's flanges are outside the scope of the Order—is supported by substantial evidence and adequate reasoning, complies with law by applying 19 C.F.R. § 351.225(k)(1), and complies with *Star Pipe IV* by correcting the errors the court identified in that decision.  Contrary to the viewpoint

Star Pipe expresses in its comment submission, the standard of review requires no more than that.

Star Pipe objects, further, to what it characterizes as "assertions made by the Department that the record could support an alternative conclusion" and to what it considers to be the Department's failure to perform a more comprehensive review of the record evidence. Star Pipe's Comments 2. This objection is unpersuasive in light of defendant's taking the position in this litigation that "Commerce reviewed the evidence on the record, in conjunction with the Court's decisions, and *found that the record lacks the necessary evidentiary support* in the scope language, the petition, the ITC's determination in its investigation, and prior scope determinations to support a finding that [Star Pipe's] flanges are within the scope of the order." Def.'s Resp. 6—7 (emphasis added).

Had Commerce, upon a comprehensive review of the record evidence, reached valid findings that it considered sufficient to support an ultimate conclusion to include some or all of Star Pipe's flanges within the scope of the Order, presumably it would have stated and relied upon those findings in the Fourth Remand Redetermination. The court's previous decisions, rather than precluding Commerce from reaching such a conclusion, disallowed only those findings Commerce made previously, as stated in the Final Scope Ruling and previous remand redeterminations, for which the record lacked substantial evidence. *See, e.g., Star Pipe IV*, 46 CIT at __, 607 F. Supp. 3d at 1200

("Commerce must issue a new determination that decides the issue of whether or not Star Pipe's flanges are within the scope of the Order based on findings that are supported by the evidence on the record considered as a whole, including evidence detracting from its findings."); *Star Pipe III*, 45 CIT at __, 537 F. Supp. 3d at 1380 ("The court does not reach its own conclusion as to whether some or all of Star Pipe's flanges must be determined to be within or outside the scope of the Order, as that is a matter for Commerce to determine upon remand.").  It is the role of the agency, not the court, to reweigh the evidence considered on the whole, and Commerce has done so in deciding that Star Pipe's flanges are not subject to the Order.

## III. Conclusion

The Department's most recent decision that Star Pipe's flanges are not within the scope of the Order is supported by substantial evidence on the record considered as a whole, is otherwise consistent with law, and is adequately explained.  Judgment sustaining the Fourth Remand Redetermination will enter accordingly.  Consistent with the Fourth Remand Redetermination, the Judgment will direct Commerce to publish a Federal Register notice of the Department's determination that Star Pipe's ductile iron flanges are outside the scope of the Order and to issue, at that time, relevant instructions to Customs and Border Protection effectuating that determination.  *Fourth Remand Redetermination* 24.

/s/ Timothy C. Stanceu

Timothy C. Stanceu

Judge

Dated:    March 6, 2024
         New York, New York